**Tran Anh PHUONG, Plaintiff,**

v.

**NATIONAL ACADEMY OF SCIENCES, Defendant.**

Civil Action No. 93–2269 (PLF).

United States District Court, District of Columbia.

May 31, 1996.

Barbara B. Hutchinson, New Carrollton, MD, for plaintiff.

William F. Causey, Washington, DC, for defendant.

## OPINION AND ORDER

FRIEDMAN, District Judge.

After the termination of 18 years of employment with the National Academy of Sciences, Tran Anh Phuong brought an administrative charge of employment discrimination on the basis of race and national origin against her former employer. She later amended her complaint to add a claim of age discrimination. Ms. Phuong exhausted her administrative remedies and filed this civil action. After a six-day trial before a jury on Ms. Phuong's age claim and before the Court on Ms. Phuong's race and national origin claims, the jury returned a verdict for Ms. Phuong and found that she is entitled to damages as a result of defendant's willful discrimination against her on the basis of her age.[1]

Defendant moves for judgment as a matter of law or, in the alternative, for a new trial on the grounds that no reasonable juror could have concluded that plaintiff was discriminated against because of her age. *See* Rule 50(b) and Rule 59, Fed.R.Civ.P. "An entry of judgment as a matter of law is warranted only if 'the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men [and women] could not disagree on the verdict.'" *Hayman v. National Academy of*

---

1. Because the incidents complained of took place before November 21, 1991, plaintiff was not entitled to a jury trial on her race and national origin claims. *Phuong v. National Academy of Sciences,* 901 F.Supp. 12, 16 (D.D.C.1995). By separate Findings of Fact and Conclusions of Law, entered today, the Court finds that plaintiff has not proved her race and national origin claims and enters judgment for defendant.

*Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994) (quoting *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.1984)). "In making that determination, a court may not assess the credibility of witnesses or weigh the evidence." *Id.* (citing *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983)). A new trial may be granted "for any of the reasons for which new trials have heretofore been granted...." Rule 59(a), Fed.R.Civ.P. In this case, defendant seeks a new trial because, it argues, the jury was swayed by sympathy and passion because Ms. Phuong is currently disabled and appeared before the jury in a wheelchair.

## DISCUSSION

### A. Evidence of Age Discrimination

This case was tried over six days; both plaintiff and defendant presented witnesses and documentary evidence to the jury. All the major players in the drama testified and were cross-examined. Because plaintiff's claim was fully tried on the merits, on this motion the Court is faced with the " 'ultimate question of discrimination *vel non*'—'whether the defendant intentionally discriminated against the plaintiff' on the basis of age.' " *Hayman v. National Academy of Sciences,* 23 F.3d at 537 (quoting *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983)). Whether plaintiff has made out a *prima facie* case "is no longer relevant." *Id.*[2]

■ To prevail under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* plaintiff must establish by a preponderance of the evidence that age was a determining or motivating factor in an adverse employment action taken by her em-ployer. *Hazen Paper Company v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); *Hayman v. National Academy of Sciences,* 23 F.3d at 538 (citing, *inter alia, Krodel v. Young,* 748 F.2d 701, 706 (D.C.Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985)). Plaintiff was a member of the class protected by the ADEA; she was 57 years old at the time her employer removed her from her grade 10 Executive Assistant position at the Commission on Engineering and Technical Systems ("CETS") at the National Academy of Sciences ("NAS"). Ms. Phuong had held that position for many years under three different directors and had received outstanding performance evaluations and commendations over the years. NAS filled the position previously held by Ms. Phuong with a person who was only 42 years old.[3]

NAS claimed that it determined to remove plaintiff from her position because her performance failed to meet NAS's legitimate expectations. Her immediate supervisor, Archie Wood, testified that Ms. Phuong was unable to perform certain computer tasks that he expected her to complete and that he was dissatisfied with her writing. Marlene Beaudin also testified that Ms. Phuong was unable to complete computer tasks and that she was responsible for the loss and misprocessing of certain documents. Defendant contends that it made every effort to find an alternative position for Ms. Phuong, but that she ultimately decided to resign because of a work-related back injury.

Ms. Phuong testified that NAS determined to remove her from her job because of her age and that she was forced to resign. Plaintiff offered evidence that Mr. Wood and Ms. Beaudin never documented any shortcomings in her performance and, although they did not communicate their dissatisfac-

---

2. In any event, the Court articulated at the close of plaintiff's case, and again at the close of defendant's case, the reasons for its conclusion that plaintiff had indeed established a *prima facie* case of age discrimination.

3. At trial, the Court rejected defendant's argument that plaintiff could only prove a *prima facie* case of age discrimination if the person who replaced her was outside the protected class, that is, under the age of 40. The Supreme Court subsequently held, consistent with this Court's opinion, that "[t]he fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant [to the *prima facie* case] so long as he has lost out because of his age." *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

tion with her performance until several months after they first began discussing replacing her, they did discuss between themselves the fact that Ms. Phuong was approaching retirement age.

By March 15, 1991, Ms. Beaudin was working on a document redefining plaintiff's job description. Pl.'s Ex. 3; Wood Testimony. By early April 1991, unbeknownst to Ms. Phuong, Ms. Beaudin had prepared a draft of a negative performance review concerning Ms. Phuong. Pl.'s Ex. 5; Starliper Testimony. On April 9, 1991, Ms. Phuong received a memorandum from Mr. Wood informing her that he was delaying her annual performance review for three months in order to permit her to adjust to new duties and responsibilities. Wood Testimony; Phuong Testimony; Pl.'s Ex. 6. There was no reference to deficient performance in the memorandum and there was no follow-up conversation between Mr. Wood and Ms. Phuong concerning the contents of the memorandum. Phuong Testimony; Wood Testimony. On April 30, 1991, Ms. Phuong gave a memorandum to Mr. Wood in which she listed questions about her new responsibilities. Pl.'s Ex. 8; Phuong Testimony. Mr. Wood told Ms. Phuong that he would discuss her memorandum with Ms. Beaudin and get back to her about her questions. At no time did Mr. Wood or Ms. Beaudin respond to Ms. Phuong's April 30, 1991 memorandum. Phuong Testimony; Wood Testimony. Charles Starliper, defendant's Director of Personnel, testified that the absence of written documentation concerning plaintiff's shortcomings was "an anomaly" at the NAS. Starliper Testimony.

At some point that spring, during a discussion concerning how to remove Ms. Phuong from her Executive Assistant position, Mr. Wood, Ms. Beaudin and Ms. Mary Frances Lee discussed the fact that plaintiff would be eligible to retire in a couple of years. Deposition of Archie Wood at 49–51; Wood Testimony. On July 22, 1991, Mr. Wood sent an e-mail to Mr. Starliper in which he referred to the fact that Ms. Phuong would be eligible to retire in two years and "reap[ ] the benefits for which she has worked for most of 20 years." Pl.'s Ex. 11. He queried whether "there are places in the institution where she could make a contribution for a couple of years, yet be out of the 'critical path' of one [of] the biggest [National Research Council] units." *Id.*[4] Mr. Starliper responded by cautioning that "[t]here can be no agreement that she might be placed in a unit for two years and then retire; the date of her retirement can only be her decision." *Id.*

Plaintiff also presented evidence that her duties were dramatically altered in the spring of 1991, that she was assigned computer tasks that had previously been performed by Teree Dittmar, the younger woman who eventually replaced her, and that she had neither the software nor adequate training to complete those tasks. Phuong Testimony.

These facts could lead a reasonable trier of fact to conclude that Mr. Wood and Ms. Beaudin believed that Ms. Phuong's productivity and competence were affected by her age and that they did not give her a genuine opportunity to prove them wrong; it could also lead a reasonable trier of fact to conclude that Ms. Phuong's age itself was a motivating factor in their decision to alter her responsibilities.

On or about August 16, 1991, Mr. Starliper offered plaintiff the option of accepting a demotion to grade 7 or accepting a demotion combined with working at the lower grade job half-time. This was the first time Ms. Phuong was informed that she would be removed from her job because of shortcomings in her performance. Phuong Testimony; Starliper Testimony; Wood Testimony. Plaintiff was absent from work for a period in August and September 1991 due to a back injury. By the time she returned to the office on September 9, 1991, her position, which had been a grade 10 position, was being advertised as vacant at a grade 9 level. In addition, the grade 7 position that had been offered to her was being advertised as vacant. Phuong Testimony; Starliper Testimony. Plaintiff resigned.

Plaintiff was replaced by Teree Dittmar who, at age 42, was 15 years younger than

---

**4.** The National Research Council is an operating    arm of the NAS.

plaintiff. Ms. Dittmar's performance subsequently was documented by Mr. Wood and Ms. Beaudin as deficient and Ms. Dittmar was given a year to improve her performance and attendance. Pl.'s Exs. 29, 32, 33. Eventually, Ms. Dittmar's absenteeism caused her to be moved to a different job at her then-current grade, but at only 80% time. Pl.'s Ex. 33.

While the proof of age discrimination is not overwhelming, a reasonable juror could infer from this evidence that Mr. Wood and Ms. Beaudin determined to remove plaintiff from her position as Executive Assistant in the Commission on Engineering and Technical Systems at NAS, that her age was a determining factor in their decision, that plaintiff was not given a realistic opportunity to meet their expectations and that plaintiff was forced to resign. Mr. Wood and Ms. Beaudin's failure to document Ms. Phuong's alleged performance deficiencies, and their offer of a demotion, at full or half-time, contrasts dramatically with the procedure they followed with Ms. Dittmar, the younger employee who replaced Ms. Phuong. In addition, Mr. Wood's determination to lower the grade of the Executive Assistant job from a grade 10 position to a grade 9 position also could lead to the inference that Mr. Wood wished to replace plaintiff with a younger employee. Moreover, Mr. Wood conceded that he was aware of and had discussed the fact that Ms. Phuong would be eligible for retirement within a couple of years both with others on his staff and with the Personnel Director.

### B. Willfulness

The ADEA provides for legal and equitable relief including reinstatement, promotion, and unpaid wages. It further provides that in addition to this legal and equitable relief, liquidated damages "in an amount equal to the wages lost," 29 U.S.C. § 216(b), "shall be payable ... in cases of willful violations...." 29 U.S.C. § 626(b). In this case, the jury found by a preponderance of the evidence that plaintiff's age was a motivating reason for defendant's decision to remove her from her position and that she was entitled on this basis to back pay and benefits in the amount of $42,000.00. The jury also found by a preponderance of the evidence that defendant's decision to remove plaintiff from her position was willful. *See* Special Verdict Form. Defendant argues that, even if a jury could find that age was a motivating factor in the decision to remove Ms. Phuong from her job, no reasonable juror could have found that defendant willfully violated the ADEA.

An employer's violation is found to be willful if " 'the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " *Hazen Paper Co. v. Biggins,* 507 U.S. at 614, 113 S.Ct. at 1708 (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985)). "Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant, rather than a determinative, factor in the employment decision." *Id.* at 617, 113 S.Ct. at 1710. The two-tiered liability scheme for willful and non-willful violations "is designed to shield the employer who violates the Act without knowing it." *Shager v. Upjohn Co.,* 913 F.2d 398, 406 (7th Cir.1990) (citations omitted). Thus, an employment decision motivated by age is not willful if the employer incorrectly, but in good faith and nonrecklessly, believed that the statute permitted the age-based decision. *Hazen Paper Co. v. Biggins,* 507 U.S. at 616, 113 S.Ct. at 1709. In a disparate treatment case such as this one, where the employer refuses to acknowledge its reliance on age, a reasonable juror certainly could reach the conclusion that the employer's violation was willful. *See id.* at 617, 113 S.Ct. at 1709–10. The jury having found willfulness, the Court will vacate the original judgment in the amount of $42,000.00 and enters an amended judgment in the amount of $84,000.00.

### C. Jury Sympathy

Defendant asks the Court to grant its motion for a new trial because it contends that the jury's short period of deliberations demonstrates that the jury did not consider the evidence and apply the law, but rather

was motivated by sympathy for the wheelchair-bound plaintiff. *See Webb v. Hyman,* 861 F.Supp. 1094, 1109 (D.D.C.1994). "In deciding whether to grant a new trial, the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Lewis v. Elliott,* 628 F.Supp. 512, 516 (D.D.C.1986) (citation omitted); *see Webb v. Hyman,* 861 F.Supp. at 1109 ("[C]ourts should not grant new trials without a solid basis for doing so."). As discussed above, there is sufficient evidence from which a reasonable juror could find by a preponderance of the evidence that plaintiff was discriminated against because of her age.

■ Although Ms. Phuong is confined to a wheelchair, the Court concludes that sufficient measures were taken to minimize the impact on the jury of Ms. Phuong's disability. During voir dire the potential jurors were queried about whether they would be affected by their observation of Ms. Phuong's disability. The jurors were given a cautionary instruction at the beginning of the trial directing them not to draw inferences from Ms. Phuong's physical condition because it was not an issue at trial and because there was no allegation that it was related to events at the NAS. Moreover, with one exception, the Court attempted to minimize the impact of plaintiff's condition by ensuring that Ms. Phuong was seated at counsel table or in the witness box before the jury entered the Courtroom. The Court sees no reason to grant a new trial on this basis.

### D. Mitigation of Damages/Unemployment Benefits

■ Finally, defendant insists that plaintiff's damage award should be reduced because she received unemployment insurance benefits and because she either did not exercise reasonable diligence in her job search or she rejected the offers of employment made to her by the NAS. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982). Defendant carries the burden of establishing that suitable positions existed for plaintiff and that she failed to use reasonable diligence in seeking

them out. *EEOC v. District of Columbia Dep't of Human Services,* 729 F.Supp. 907, 916 (D.D.C.1990). In this case, the only alternative employment for Ms. Phuong about which there was any testimony was a grade 7 position, at either full or half-time, that was offered to her when she was being removed from her grade 10 Executive Assistant position.[5] As described by Ms. Beaudin and Mr. Wood, the grade 7 position was not substantially equivalent in pay, responsibility or hours to Ms. Phuong's grade 10 position. *See Hartman v. Wick,* 678 F.Supp. 312, 337–38 (D.D.C.1988). Moreover, the fact that Ms. Phuong's Executive Assistant position and the grade 7 position that she had been offered were both posted as vacant before Ms. Phuong informed defendant of her decision concerning whether to accept the demotion to the grade 7 position suggests that Ms. Phuong had reason to believe that the job offer was not genuine.

■ As to unemployment insurance, defendant relies upon *Bishop v. Jelleff Associates,* 398 F.Supp. 579 (D.D.C.1974) and *Marshall v. Communications Workers of America,* 26 Fair Empl.Prac.Cas. (BNA) 1017, 1979 WL 6 (D.D.C.1979). In *Bishop,* the court stated, without discussion, that damage awards are reduced by the amount of unemployment insurance benefits. While the magistrate judge in *Marshall* discussed the issue in greater detail, the Court finds more persuasive the reasoning of a recent opinion by Judge Lamberth in which he determined that benefits from a collateral source such as unemployment insurance should not lessen recoverable damages. *Neal v. Director, District of Columbia Dep't of Corrections,* 1995 WL 517249, *5 (D.D.C. Aug. 9, 1995). Judge Lamberth reasoned that

> [u]nemployment benefits do not represent multiple recovery for injuries inflicted upon the plaintiffs by [defendant]. Instead, these benefits are remuneration under a separate contract with the government, financed by payroll taxes and payable whether or not an employer is culpable of sexual harassment or any oth-

---

5. There was some testimony about creating a new position for Ms. Phuong as late as October 1991, after the grade 7 position had been filled, but the Court does not credit that testimony.

er tort. Plaintiffs are separately entitled to back pay and to unemployment benefits. The former is compensation for the wrong they have suffered. The latter is an obligation incurred by the government under a distinct and unrelated statutory regimen.

*Id.* at *7. The Court concludes that unemployment insurance benefits should not be subtracted from plaintiff's award.

For the foregoing reasons, it is hereby

ORDERED that defendant's motion under Rule 50(b), Fed.R.Civ.P., for judgment as a matter of law is DENIED. The jury's verdict is permitted to stand. An amended judgment consistent with this Opinion is issued this same day; and it is

FURTHER ORDERED that defendant's alternative motion under Rule 59, Fed.R.Civ. P., for a new trial is DENIED.

SO ORDERED.