**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0378n.06

Case No. 14-1607

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LINDA GREEN, | ) | **FILED** |
| | ) | May 27, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TOWNSHIP OF ADDISON; JERRY | ) | MICHIGAN |
| MORAWSKI | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: SILER, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. Linda Green, the former office manager for the Addison Township Fire Department, alleges that the township fired her because of her age. The fire chief and township (collectively, "the township") maintain that economic necessity, not unlawful discrimination, prompted Green's termination. The district court granted summary judgment to the defendants, and Green now appeals. We AFFIRM.

I.

In 1999, the township hired Green as a clerk in its fire department. Over the next ten years, Green received uniformly positive performance reviews, resulting in numerous raises and two promotions—first to administrative assistant, then to office manager. Throughout this time, Green served as the fire department's sole clerical employee.

In early 2010, Addison Township Fire Chief Jerry Morawski, in consultation with the township's assessor and treasurer, began budget projections for the coming year. Addison Township funds its fire department through taxes on the township's property values, which dropped over $50 million from 2008 to 2010. In turn, the fire department's property-tax revenues fell from $719,899.04 in 2008, to $666,999.27 in 2010, to $629,588.72 in 2011. While the department's resources steadily declined, the township's demand for fire-and-rescue services increased, resulting in forty more rescue calls in 2010 than in 2008.

To address these concerns, Chief Morawski decided to eliminate Green's clerical position and create a hybrid "firefighter/EMT/office manager" position. Chief Morawski expected the firefighter/EMT/office manager to perform the department's clerical tasks and to go on daytime fire-and-rescue runs. As such, the hybrid position required applicants to possess Michigan Fire Fighter's Training Council Firefighter II certification and Michigan EMT-B certification.

After the fire and township boards approved the hybrid position, Chief Morawski offered it to Green, then fifty-five years old. Though Green lacked Firefighter II training and EMT-B certification, Chief Morawski offered to send Green to the requisite training programs using township funds. Before underwriting Green's training, Chief Morawski required successful completion of the seven-stage North Oakland Agility Test. Chief Morawski required all novice firefighter candidates—employment candidates who had not received Firefighter I and II training and EMT-B certification—to pass this test. He believed that a candidate who failed the test would likewise fail to complete Firefighter I and II training, wasting the township's tuition money.

Receiving less than two weeks' notice of the agility-test requirement, Green spent a few hours training with Addison Township firefighters. On testing day, she attempted the "simulated

rescue" exercise, in which test-takers carry a 120-pound dummy up and down a flight of stairs. Green quit the simulated rescue after two minutes, never reaching the top of the stairs. Because the agility test requires successful completion of all seven exercises, Green immediately failed. Chief Morawski terminated her three days later.

Chief Morawski subsequently posted the hybrid firefighter/EMT/office manager position on the fire department's job board. He hired twenty-nine-year-old Angela Haines, a Firefighter-II- and EMT-B-certified firefighter with some clerical experience. Haines, who had worked as a part-time, on-call firefighter in the township for four years, never took the North Oakland Agility Test.

Green sued Addison Township and Chief Morawski, alleging age discrimination in violation of the federal Age Discrimination in Employment Act and the Michigan Elliot-Larsen Civil Rights Act, as well as a failure-to-train claim under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The district court granted summary judgment to the defendants, finding that Green did not establish a prima facie case and did not show that the township's justification for her termination was pretextual. Green timely appeals.

II.

We review the district court's grant of summary judgment de novo. *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 528 (6th Cir. 2014). We construe all inferences in the nonmoving party's favor, *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013), upholding the grant of summary judgment if there is no genuine dispute as to any material fact such that the defendants are entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); *Scheick*, 766 F.3d at 529.

III.

On appeal, Green attacks the district court's determination that she did not establish a prima facie case for age discrimination. She also asserts that the district court erred in finding that the township offered a legitimate, non-pretextual reason for eliminating her position and terminating her. Even if we assume that Green established a prima facie case, she has not shown that the township's reason for terminating her—economic necessity—served as a pretext for discrimination.

Green need only identify a genuine dispute of fact regarding the legitimacy of the township's stated justification to withstand summary judgment. *See Wheat v. Fifth Third Bank*, __ F.3d __, 2015 WL 2116129, at *9 (6th Cir. May 7, 2015). Green attempts to do this in two ways: by arguing that the township's justification—economic necessity—had no basis in fact and that it did not motivate the township's conduct. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014). To prove the township's economic-necessity justification had no basis in fact, Green must show that the township did not honestly believe in it, *i.e.*, that the township did not believe it needed to reduce payroll and consolidate positions. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008). To show that economic necessity did not actually motivate the township, Green must identify circumstances that question the veracity of the economic-necessity justification. She must establish "that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id*. at 396 (internal quotation marks omitted). Under either method, Green fails to show pretext.

Green first argues that the township suffered no economic hardship at the time of her termination, rendering its economic-necessity justification baseless. The township garnered

budget surpluses totaling $167,610.85 in the three years following her termination and made several large purchases in the same timeframe, including a $5,000 fire truck and a $31,116 GMC Yukon. These signs of economic health, Green maintains, contradict the township's claimed economic malaise.

In fact, the record exhaustively details the township's deteriorating finances. In early 2010, Chief Morawski projected that the department's expenditures would exceed revenue if left unchecked. He concluded that he could reduce payroll, eliminate overtime hours in the day shift, and meet increased demand by creating a firefighter/EMT/office manager position and eliminating Green's job. In short, he "'made a reasonably informed and considered decision before taking the complained-of action.'" *Allen*, 545 F.3d at 398 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007)). Moreover, Chief Morawski's projections all proved correct. Revenues indeed declined in 2010, but the creation of the firefighter/EMT/office manager position reduced payroll expenses. (*Compare* R. 42-4, Budget Reports, ($421,936.98 in 2009 wages) *with id.* ($415,542.45 in 2010 wages) *and id.* ($399,343.43 in 2011 wages).) Further, Haines performed all the department's clerical tasks while answering daytime 911 calls and going on daytime runs. The surpluses do not negate the department's declining revenue; they merely reflect the department's response to the changing financial landscape. Further, the township purchased the fire truck and GMC Yukon with funds held for capital expenditures, a budget source not available for paying operating expenses like salaries.

Green also argues that economic necessity did not actually motivate the township to eliminate her position, create the hybrid position, and then require her to take the agility test. She alleges that the township did not believe that she could perform firefighting tasks at age

fifty-five and therefore forced her to take a test she was sure to fail. The agility test, according to Green, served as mere pretext—the township terminated her because of her age. *See Phuong v. Nat'l Acad. of Scis.*, 927 F. Supp. 487, 490 (D.D.C. 1996) (failing to allow an employee to become proficient in her new duties before terminating her can give rise to an inference of age discrimination).

But Green ignores the relationship between the agility test, the firefighter/EMT training, and the township's finances. Under Chief Morawski, the fire department required firefighter candidates who had not completed Firefighter I and II training to take the North Oakland Agility Test. Candidates who cannot complete the agility test, according to Chief Morawski, "will likely be unsuccessful in Firefighter I and Firefighter II training and equally unsuccessful as a Firefighter/EMT." Because Firefighter I and II are physically demanding courses, "candidate[s] . . . ha[ve] to pass the agility test so they don't fail out of fire school and [the township doesn't] waste any money" paying for the coursework. Certified firefighters, on the other hand, do not need to attend township-funded training before beginning work because they have already successfully completed fire school. The township therefore lacks a financial incentive to pre-screen them with the agility test.

Green presents no evidence to contradict the above facts or call them into question. She admits that Chief Morawski offered to pay for her to attend fire school because the township wanted another full-time firefighter during the day shift. She does not dispute that Chief Morawski required all novice firefighter candidates to pass the agility test before the township paid for their training. While firefighters hired by Chief Morawski's predecessor took the agility test after firefighter school, Chief Morawski never permitted this. Green presents some evidence that she might have passed the agility test *after* extensive, township-funded training. But she

presents no evidence that economic necessity did not actually motivate the township to create a consolidated position that would cut payroll. Nor has she pointed to any evidence that economic necessity did not motivate the township to require Green to pass the agility test before paying for fire school. The township treated Green as it treated every other firefighter candidate, and accordingly, Green's ADEA and ELCRA claims fail. *See Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015) (noting that Michigan courts use the ADEA framework to analyze ELCRA claims). Green's § 1983 claim also fails because she does not present a constitutional injury. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

## IV.

For these reasons, we AFFIRM the judgment of the district court.