NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2011
Decided March 21, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 10-2314

| | |
|---|---|
| CELIA HNIZDOR,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>PYRAMID MOULDINGS, INC.,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 05 C 1740<br><br>Geraldine Soat Brown,<br>*Magistrate Judge.* |

**O R D E R**

Celia Hnizdor claims that Pyramid Mouldings fired her from her position in the company's accounting department because of her age. *See* 29 U.S.C. § 623(a)(1). A magistrate judge, presiding by consent, granted summary judgment to Pyramid, and we affirm. No reasonable juror could conclude that Hnizdor lost her job because of her age; the uncontradicted evidence shows, to the contrary, that Hnizdor lost her job because Pyramid moved its accounting department from Illinois to Florida as part of a companywide restructuring.

By all accounts Hnizdor enjoyed a successful career at Pyramid. In 1966 she started working at the company's Illinois factory, which produces custom metal mouldings, and in 1981 she took a desk job. In addition to training her, the company paid for her to take a

typing class at a local community college. In 1996 she became a clerical employee in Pyramid's accounting department, where her duties included entering timekeeping data and mailing out paychecks.

As Hnizdor began working in the accounting department, however, change was looming on the horizon. In the mid-1990s, Pyramid's president decided to move the company's accounting department from Illinois to Florida, where he kept his office. The move was a small piece of a broad plan to consolidate in the Sunshine State the company's white-collar workers, who were scattered across Georgia, Florida, and Illinois. When the company's vice-president of accounting retired in 1999, Pyramid figured that the time was ripe to move the department south. Erv Walz, the vice-president of human resources, was put in charge of winding down the accounting department's operations in Illinois. Concluding that it would be too expensive to relocate clerical employees like Hnizdor, Pyramid instead planned to hire Florida-based workers to fill those positions.

According to Hnizdor, however, Walz didn't mention any of this when he called her into his office in March 1999. Instead he asked how old she was. Upon learning that she was 67, he said, "Isn't it time you gave someone else the job and retire?" She demurred, but Walz insisted that, although he knew she was a good worker and had been with the company a long time, he wanted to replace her with someone younger.

Pyramid laid off Hnizdor a week later. All but one of the ten clerical employees in the accounting department lost their jobs too; most were laid off, while a few retired. Although some, like Hnizdor, were over 40, one employee was only 26 and another just 37. Pyramid did not offer any of these employees a job at the company's factory in Illinois, which was unaffected by the restructuring. Walz did retain one clerical employee, Kathy Sheehan, to tie up loose ends in Illinois. Both before and after the restructuring, Sheehan was responsible for accounts payable. She was about half Hnizdor's age, but, unlike Hnizdor, she had accounting skills. Even after the restructuring, when Sheehan took on some data-entry work that previously had been done by Hnizdor, the majority of her time was spent on accounts payable, a task beyond the scope of Hnizdor's experience and ability. Two years later Pyramid moved Sheehan's position out of Illinois too. At that point the accounting department's transition to Florida was complete.

Before the district court, Hnizdor argued that her brief conversation with Walz in March 1999 was direct evidence that Pyramid fired her because of her age. The court reasoned, however, that, in light of the undisputed evidence of Pyramid's plan to transfer the entire accounting department to Florida and Hnizdor's limited skill set, no reasonable juror could infer that Hnizdor's age was the determinative cause of her losing her job. Nor

did Hnizdor fare any better in her attempt to make out a claim using the indirect method of proof; the court concluded that she had presented no evidence to suggest that Pyramid's restructuring was but a ruse to cover up the real reason why she lost her job.

On appeal Hnizdor insists that she has presented sufficient evidence to reach a jury on the question whether Pyramid fired her because of her age. The crux of Hnizdor's case is her contention that, even though the company was implementing a longstanding plan to move its accounting department out of Illinois, Walz's suggestion—a week before she lost her job—that she ought to retire and make way for a younger employee shows that Pyramid laid her off because of her age. Walz doesn't remember making that suggestion, and the parties dispute whether he had any discretion to select which Illinois-based employees would survive the restructuring. For purposes of deciding Pyramid's motion for summary judgment, however, we may assume that Walz chose who would remain in Illinois while the accounting department wound down operations and that at one point he encouraged Hnizdor to retire because of her age. Nonetheless, it is undisputed that Pyramid's president ordered the entire accounting department transferred to Florida, that Pyramid did not relocate any clerical employees to Florida, and that the one clerical employee who stayed on temporarily in Illinois possessed accounting skills and experience that Hnizdor lacked.

To prevail on her claim under the Age Discrimination in Employment Act, Hnizdor "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009). *See also Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010); *Senske v. Sybase, Inc.*, 588 F.3d 501, 508-09 (7th Cir. 2009). "[B]igotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). An employer does not run afoul of the ADEA, for example, by suggesting that an older worker consider retirement as an alternative to being laid off in the midst of a corporate restructuring. *Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709, 714-15 (7th Cir. 1999). *See also Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (reasoning that employer's remark that employee should consider retirement, instead of facing discharge for committing fraud, would not permit inference of age-based discrimination *unless* employee could show that fraud accusation was pretext); *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992) (explaining that employer's "clumsy" suggestions that poor-performing employee consider retiring as "a face-saving way out" did not permit inference of age-based discrimination because ADEA "does not require firms to deal gracefully with employees they want to get rid of, though firms that do are probably sued less").

When Walz's regrettable comment is set against the backdrop of the undisputed evidence that Pyramid had a longstanding plan to move its accounting department to Florida and that Hnizdor had a limited skill set, no rational juror could infer that Hnizdor's age was the *but-for* cause of her losing her job. Hnizdor makes much of the fact that Pyramid didn't offer her an opportunity to relocate to Florida or conjure up a job for her at its Illinois factory, which continued to churn out roll-formed metal products long after the accountants departed for warmer climes. But the ADEA does not create a "duty to transfer an employee to another position when [a company] reduces its work force for economic reasons," *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995), and that logic applies equally to restructuring. If, on the other hand, Pyramid had implemented "internal job placement services" to help Hnizdor's younger colleagues land on their feet, then the company's failure to extend the same opportunities to Hnizdor might have put it on the wrong side of the ADEA. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 615 (7th Cir. 2000). None of Hnizdor's fellow clerical employees was invited to join the company in Florida, however, nor did any of them land a factory job in Illinois. And although Pyramid did permit the much-younger Sheehan to keep her job temporarily while the accounting department wound down operations in Illinois, Sheehan possessed accounting skills and experience that Hnizdor unquestionably did not.

Hnizdor also tries to proceed using the indirect method of proof. We may sidestep the question whether she has successfully made out a prima facie case because Pyramid has come forth with a legitimate, nondiscriminatory reason for her termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *Brewer v. Bd. of Trs.*, 479 F.3d 908, 915-16 (7th Cir. 2007). Hnizdor's claim founders, however, because she has produced no evidence that Pyramid's legitimate, nondiscriminatory reason—the accounting department's move to Florida—was, in fact, a pretext. No reasonable juror could believe that Pyramid embarked on a companywide restructuring, involving significant disruptions across three states, merely to cover up Walz's illicit urge to fire Hnizdor. *See Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 474 (7th Cir. 2008) (doubting that employer's decision to revamp organizational structure, change leadership functions, and layoff hundreds of employees was but a ruse to get rid of "senescent employees").

AFFIRMED.