RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT SCHEICK,

*Plaintiff-Appellant,*

*v.*

No. 13-1558

TECUMSEH PUBLIC SCHOOLS; PROFESSIONAL
EDUCATIONAL SERVICES GROUP, LLC,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-10493—Nancy G. Edmunds, District Judge.

Argued: May 1, 2014

Decided and Filed: September 2, 2014

Before: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** James M. Tucker, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Jeffrey S. Burg, LAW OFFICES OF , JEFFREY S. BURG, Southfield, Michigan, for Appellant. Kenneth B. Chapie, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellee Tecumseh Public. Mark R. Smith, RHOADES MCKEE PC, Grand Rapids, Michigan, for Appellee Professional Educational Services. **ON BRIEF:** James M. Tucker, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Jeffrey S. Burg, LAW OFFICES OF , JEFFREY S. BURG, Southfield, Michigan, for Appellant. Kenneth B. Chapie, Timothy J. Mullins, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellee Tecumseh Public. Mark R. Smith, RHOADES MCKEE PC, Grand Rapids, Michigan, for Appellee Professional Educational Services.

_____

**OPINION**

_____

RALPH B. GUY, JR, Circuit Judge.  Plaintiff Robert Scheick appeals from the judgment entered against him with respect to the claim that his contract was not renewed because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws Ann. § 37.2202(1)(a).  Scheick argues that summary judgment should not have been granted in favor of defendant Tecumseh Public Schools (TPS) and third-party defendant Professional Educational Services Group, LLC (PESG).  The EEOC has filed a brief as amicus curiae agreeing in part with Scheick's contentions.  *See* FED. R. APP. P. 29(a).  Finding that the evidence, viewed in the light most favorable to Scheick, was sufficient to create a genuine issue of material fact for trial, we reverse and remand for further proceedings consistent with this opinion.

**I.**

Plaintiff Robert Scheick was hired as Principal of Tecumseh High School in July 2004, when he was 51 years of age, and continued in that position until July 2010.  For the first three years, Scheick was employed directly by TPS.  Then, by agreement, the 54-year-old Scheick formally retired from TPS and was hired by the staffing firm PESG to continue working as principal under a three-year contract between TPS and PESG through June 30, 2010.  Under that arrangement, Scheick began receiving pension and health care benefits from the retirement system, and TPS avoided more than $29,000 in payroll and benefit costs per year.  In fact, the next year, several other TPS employees entered into similar arrangements as cost-saving measures.

In early 2010, when Scheick was 56 (almost 57) years of age, TPS decided not to renew the contract for his services.  Although PESG's contract was terminable upon 30-days written notice, there is no dispute that the nonrenewal was an adverse employment action with respect to Scheick.  Scheick continued to be employed as principal until the contract expired at the end of June 2010, after which he was eligible for but did not seek another assignment through PESG.

Scheick claimed that the contract was not renewed because of his age, and he filed this action against TPS after receiving a right-to-sue letter from the EEOC. TPS filed its own third-party complaint for indemnification against PESG, and PESG brought a counterclaim against TPS. The claims between TPS and PESG are not before the court—only their common position that their motions for summary judgment were properly granted with respect to Scheick's age discrimination claims.

Scheick reported directly to TPS Superintendent Michael McAran for the last four of his six years as principal (both before and after the change of employment to PESG). McAran—who is older than Scheick by about ten years—was the sole employee of TPS's seven-member Board of Education, attended meetings with the Board every two weeks, and had a practice of speaking to the board president every other day. McAran explained that he was responsible for overseeing the district, managing the budget, and making final personnel decisions.

McAran insisted that he alone made the decision not to renew Scheick's contract, but also testified that he discussed the nonrenewal with several board members individually and believed there was an informal consensus among the board members in support of his decision. Without specifying when he made that decision, McAran said it was "well before" he met with Scheick to discuss what would be Scheick's first formal performance evaluation on February 25, 2010. McAran admitted that he prepared the performance evaluation with the intention of "lay[ing] the groundwork" to end Scheick's relationship with TPS.

There was evidence that McAran received complaints from several parents, staff, and board members reflecting growing dissatisfaction with Scheick's performance and a perceived lack of leadership on his part. Two board members—Jim Rice and Karen Januszek—stated by way of affidavit that they had been teachers in the high school and were of the opinion that Scheick was not an effective principal. Scheick countered with favorable opinions of his performance from Assistant Principal Dennis Niles and Human Resources Director Donna Elser.

The most significant failure identified in the performance evaluation was the fact that the high school did not meet the state-mandated adequate yearly progress (AYP) for two consecutive years due to clerical errors (albeit errors not made by Scheick personally). Board Member Jason Sines was particularly concerned about this failing. It resulted in negative publicity for TPS, as

did an embarrassing delay of several minutes during the graduation ceremony the previous year when Scheick left the speeches of the valedictorian and salutatorian in his office. Scheick's attendance at school functions was also described as deficient, including an incident when he left a concert early and two teachers had to handle a predictably volatile parent in his absence.

The review identified other deficiencies that had occurred in recent years including: failing for a second time to ensure that transcripts of college-bound student athletes made it to the NCAA's eligibility center; failing to properly coordinate homebound-student services; mishandling an issue concerning a special education student's accommodations; and failing to notify the parents of a student appearing at an expulsion hearing before the Board. Several of these issues were raised informally with Scheick, but no further disciplinary action was taken at the time. Although the evaluation rated two areas in need of slight improvement, McAran testified that, overall, this was a "good, competent" evaluation. Without denying that these incidents had occurred, Scheick responded to each of the noted deficiencies in a letter dated March 8, 2010. On that same date, McAran sent written notice to PESG that Scheick's contract would not be renewed.

Scheick claims that McAran made statements to him suggesting age-based animus on three occasions: namely, (1) in informing Scheick that the Board wanted him to retire during the performance review on February 25; (2) in telling Scheick that "they just want somebody younger" in an exchange on February 26; and (3) in explaining to Scheick that "they wanted someone younger" in reference to both of their positions in a follow-up conversation on March 15. McAran disputed Scheick's accounts of their conversations, in part, and denied that he said the decision had anything to do with Scheick's age. Scheick and the EEOC contend that testimony concerning these statements constituted direct evidence of age discrimination.

Overlapping the reasons given by McAran, TPS also maintained that the nonrenewal was the result of budget cuts that were discussed and drafted by the board's finance committee during January and February 2010. The evidence included affidavits by two board members—Rice and Kevin Packard—who explained that newly announced reductions in state funding had substantially worsened the anticipated budget deficit for the following year. The finance committee proposed significant cuts—including closing an elementary school, selling the

administration building, reducing transportation, and eliminating several positions—as part of the budget that was presented to the Board on March 9, 2010. TPS maintained that this proposed budget contemplated elimination of the high school principal position (for an annual savings of more than $100,000).

Rice and Packard explained that consolidation of the principal and superintendent positions "made sense" since Scheick's contract was ending, the administrative offices were to be relocated to the high school building, and McAran had experience as a building principal. They both specifically denied that Scheick's age was a factor in those discussions, and emphasized that the Board had approved several other contracts with PESG for administrators who were the same age or older than Scheick had been when his contract was not renewed.[1]

The Board approved the budget sometime in May 2010, and Scheick's contract expired at the end of June 2010. McAran, who was in his mid-sixties at the time, assumed the duties of both positions on July 1, 2010. McAran and TPS Finance Director William Wright testified that they expected the consolidation of these positions to last for one or two years. The situation changed unexpectedly, however, when the Board learned just before its July 19 meeting that the reductions in state funding would likely be smaller than anticipated.

With smaller than expected cuts in state funding (together with greater than expected enrollment), the Board decided to restore a number of the eliminated positions once the additional funding was approved. The position of high school principal was posted in advance of the approval (along with one other position). In August 2010, TPS hired 44-year-old Griff Mills to be the high school principal. McAran relinquished the principal's duties and continued to serve as superintendent. Since Griff was a direct hire, TPS incurred payroll and benefit costs associated with the position that had previously been avoided by contracting through PESG.

In granting summary judgment to TPS and PESG, the district court found that Scheick had not presented direct evidence of age discrimination; could not show that he was replaced by a younger person; and that, even if he could make a prima facie showing of age discrimination,

---

[1]Specifically, TPS approved an extension of the PESG contract for Human Resources Director Donna Elser, age 57, and entered into contracts with PESG for services of Payroll Specialist Jim Brown, age 67; Secretary Cheryl Lloyd, age 62; and Director of Finance William Wright, age 59.

he failed to present sufficient evidence to establish pretext.  Summary judgment was entered in favor of TPS and PESG for the reasons set forth in the opinion and order of March 19, 2013, and plaintiff's motion for reconsideration was denied for the reasons stated in the order entered on April 30, 2013.  This timely appeal followed.

## II.

The district court's decision granting summary judgment and its denial of the motion to reconsider that decision are both reviewed de novo.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009); *Medical Mut. of Ohio v. Amalia Enters., Inc.*, 548 F.3d 383, 389-90 (6th Cir. 2008).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In making this determination, the court must "view the evidence and draw all reasonable inferences in favor of the non-moving party."  *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013).  For a genuine dispute to exist, "there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## A.     Standards

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1).  To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's "because of" language requires that a plaintiff "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 141-43, 147 (2000)).  For an employer to take an adverse action "because of age" means "'that age was the "reason" that the employer decided to act.'"  *Univ. of Tex. Sw.*

*Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527 (2013) (quoting *Gross*, 557 U.S. at 176) (extending *Gross* to retaliation claims under Title VII).**[2]**

*Gross* clarified that the burden of persuasion does not shift to the employer in an ADEA case, "even when a plaintiff has produced some evidence that age was one motivating factor in that decision." 557 U.S. at 180; *see Geiger*, 579 F.3d at 621 (recognizing abrogation of prior precedent in direct evidence cases under the ADEA). But, as this and every other circuit has held, application of the *McDonnell Douglas* evidentiary framework to prove ADEA claims based on circumstantial evidence remains consistent with *Gross*. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013) (collecting cases).

Further, nothing in *Gross* undermines the principle that "[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. TVA*, 128 F.3d 337, 348-49 (6th Cir. 1997); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"). The district court found that Scheick had not demonstrated a question of fact under either evidentiary path. Regardless of the evidentiary route taken, however, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153.

## B.      Direct Evidence

Before *Gross*, our circuit defined direct evidence as that evidence "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc); *see also DiCarlo v. Potter*, 358 F.3d 408, 415-16 (6th Cir. 2004) (*overruled on other*

---

**[2]**Michigan's Elliott-Larsen Civil Rights Act (ELCRA) provides that an employer shall not discriminate against an individual with respect to employment "because of . . . age." MICH. COMP. LAWS ANN. § 37.2202(1)(a). The district court analyzed the age discrimination claims brought under the ELCRA using the same standards we apply to claims brought under the ADEA. *See Geiger*, 579 F.3d at 626; *Bondurant v. Air Line Pilots Ass'n*, 679 F.3d 386, 394 (6th Cir. 2012); *see also Howard v. Mich. Dep't of Corr.*, No. 344258, 2013 WL 2223133 (Mich. Ct. App. May 21, 2013). Plaintiff has not argued that this was error, and any claim that the Michigan courts would analyze the claim differently has been waived.

*grounds by Gross*, 557 U.S. at 180, *as stated in Geiger*, 579 F.3d at 621). Because *Wexler*'s definition does not survive in the ADEA context after *Gross*, we now look to whether evidence, if believed, requires the conclusion that age was the "but for" cause of the employment decision. Under either articulation, the inquiry includes both a predisposition to discriminate and that the employer acted on that predisposition. *DiCarlo*, 358 F.3d at 415. In other words: "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citing cases); *see also DiCarlo*, 358 F.3d at 415. As noted, Scheick testified that McAran made statements to him on three occasions suggesting that the nonrenewal decision was caused by age-based animus.

### 1.      Statements by McAran

First, on February 25, McAran allegedly began Scheick's first formal performance review by stating: "The Board wants you to retire." McAran explained that the Board wanted to have someone as high school principal who would take over as superintendent after a few years, and then asked Scheick how long he intended to work. Scheick answered that he wanted to work at least two more years, although he did not "get a chance" to also say that he would possibly stay longer. They discussed the performance evaluation and whether a "buyout" or a one-year extension of the contract under a performance improvement plan might be possible. Scheick testified that when he added, "or the [B]oard could force you to fire me," McAran agreed with him.

The following day, February 26, McAran approached Scheick to ask whether he was "all right" and whether he would be interested in a "buyout." Then, according to Scheick, McAran volunteered that "they just want somebody younger." Finally, on March 15, a week after notice of the nonrenewal was sent to PESG, Scheick made an appointment and met with McAran to discuss his options. McAran said he had no options, and explained that "they wanted someone younger." Scheick asked what he meant, and McAran said they wanted someone younger for both the principal and superintendent positions. McAran, on the other hand, claimed that he had been referring only to himself.

### 2.      Analysis

TPS and PESG argue that these statements do not constitute direct evidence because they are ambiguous with respect to who "they" referred to, what position or positions were being referenced, and whether the statements reflected the intent of the decisionmaker.[3]

The first statement, made during the performance review, did not constitute direct evidence of age discrimination. As the district court found, McAran's statement that the Board wanted Scheick to retire would require an inference to conclude that retirement was a proxy for age (as opposed to either years of service or a desire that he leave the position voluntarily). *See, e.g., Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (finding the statement "[w]hy don't you retire and make everybody happy" did not constitute direct evidence of age discrimination).

In contrast, McAran's other two statements about wanting "someone younger" are not ambiguous and, if believed, do not require an inference to conclude that age was the but-for cause of the decision not to renew Scheick's contract. First, the statements by McAran to Scheick on February 26 and March 15, respectively, represent direct references to age. *See Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 794 (6th Cir. 2013) (involving statement "we want someone younger"). Moreover, the statements are not ambiguous despite the lack of an explicit statement that "the Board" wanted someone younger. *Cf. Fuhr*, 710 F.3d at 674 (finding ambiguities required inferences about what part of the "old boys network" took which unspecified retaliatory actions). Any suggestion that "they" could have referred to parents or staff is not credible. Rather, as Scheick and the EEOC argued, McAran could not have been referring to anyone other than the Board (whether formally or by informal consensus).[4]

Nor are McAran's alleged statements made ambiguous because there is uncertainty about whether McAran was referring only to Scheick's position as principal or to both the principal

---

[3]There is no dispute that McAran's alleged statements would be relevant to show age-based bias in connection with the nonrenewal decision; the only question is whether they constitute direct evidence of age discrimination. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (identifying four factors to be considered in evaluating statements that allegedly show an employer's age bias); *see also Diebel v. L&H Res., LLC*, 492 F. App'x 523, 526 (6th Cir. 2012).

[4]Scheick and the EEOC also argued that McAran must have been referring to the Board because his first statement about retirement expressly referenced the Board. However reasonable such an inference might be, it would require an inference to reach that conclusion.

and superintendent positions. Either way, McAran was at least referring to Scheick's position. Finally, TPS argues that there is ambiguity about whether the statements reflected the intention of the decisionmaker. However, because there was evidence that both McAran and the Board were involved in making the decision, it is immaterial whether McAran was acting at the behest of the Board, or on his own with input from the Board. *Cf. Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 589-90 (6th Cir. 2003) (statement by supervisor with no involvement in the decision was not direct evidence of age discrimination). Thus, Scheick presented evidence which, if believed, would require the conclusion that age was the but-for cause of TPS's decision not to renew the contract.

## C.     But-For Causation

The EEOC asserts that, by definition, the presentation of direct evidence of age discrimination *necessarily* precludes entry of summary judgment in favor of the employer. Although this question has not been squarely addressed in the case law since *Gross*, the EEOC's citation to *Geiger* does not support its contention that direct evidence will *always* defeat an employer's motion for summary judgment with respect to claims under the ADEA.

In *Geiger*, after finding that direct evidence of age discrimination had not been presented, this court also held that, even if the plaintiff had established a link between the allegedly biased actor and the adverse action, "the record clearly indicates that age was not the 'but-for' factor in [the] decision to choose [another] over Geiger." *Geiger*, 579 F.3d at 622 n.3. This conclusion recognizes that *Gross* altered the burden of proof on the issue of causation and indicates that direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context. *See also Hnizdor v. Pyramid Mouldings, Inc.*, 413 F. App'x 915, 918 (7th Cir. 2011) (holding that despite direct evidence of age-based animus, undisputed evidence of longstanding plan to move accounting department established that no rational juror could conclude that age was the but-for cause of the adverse action).[5]

---

[5]The EEOC's passing citation to *Sharp* is also unavailing. There, although direct evidence was presented, the court considered evidence of other explanations and concluded that the "true reason" for the adverse action could not be determined as a matter of law. *Sharp*, 726 F.3d at 802 (applying *Gross* to claim under Kentucky law).

Moreover, it is telling that *Gross* relied on *Reeves*, which, in turn, reiterated that "trial courts should not treat discrimination differently from other ultimate questions of fact." *Reeves*, 530 U.S. at 148 (citation and internal quotation marks omitted). The Court explained that the ultimate question (even under *McDonnell Douglas*) is whether the evidence taken together "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. Thus, even when direct evidence of age discrimination has been offered, the question to be asked in deciding an employer's motion for summary judgment is whether the evidence, taken as a whole and in the light most favorable to plaintiff, is sufficient to permit a rational trier of fact to conclude "that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 178.

Here, notwithstanding the evidence of dissatisfaction with Scheick's performance and the concurrent need to respond to the budget crisis, the evidence, taken as a whole and in the light most favorable to Scheick, is sufficient to permit a reasonable juror to conclude that Scheick's age was the but-for cause of TPS's decision not to renew the contract for his services. Although TPS or PESG may ultimately prove otherwise, Scheick has met his burden to come forward with evidence sufficient to establish that a genuine issue of material fact exists for trial.

**REVERSED** and **REMANDED** for further proceedings consistent with this opinion.