NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0067n.06

No. 14-5649

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 22, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DEDRA JOHNSON, et al., | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF KENTUCKY |
| LOCKHEED MARTIN CORP., | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |

Before: COLE, Chief Judge; and GRIFFIN, Circuit Judge; and CARR, District Judge.[*]

CARR, District Judge. Plaintiffs Dedra Johnson, Al Stakelin, Mae Lee Walker, Randall Prather, and Shelby Thompson appeal the district court's grant of summary judgment to defendant Lockheed Martin Corp. (Lockheed). Plaintiffs sued Lockheed under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and the Kentucky Civil Rights Act (KCRA), KRS § 344.040, claiming it refused to hire them because of their age. The district court found that plaintiffs failed to establish a *prima facie* case of age discrimination. We affirm the district court's judgment, although we do so on a different basis.

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

In 2010, the United States Special Operations Command awarded Lockheed a contract to provide services to the Special Operations Forces Support Activity (the SOFSA Contract). To ensure adequate performance on the contract, Lockheed subcontracted some of the work to another company, DS2.

Shortly after the subcontract took effect, the Special Forces began complaining about the rates that DS2 charged. Instead of continuing the subcontract, Lockheed decided to have its own employees do the work.

DS2 employed a little over 500 people to work on the SOFSA Contract. Lockheed determined it could do the work with about 400 people.

Around August 8, 2011, Lockheed began soliciting applications for the 400 positions. It set a target end date of September 5, 2011, posted the open positions on its website, and told interested DS2 employees to apply for any positions for which they felt qualified. Although the positions were open to the public, Lockheed eventually hired only former DS2 employees.

Bracing for the influx of hundreds of applications, Lockheed hiring managers and supervisors prepared "skills assessments" matrices to score each applicant. From those scores, the managers and supervisors selected whom to interview.

Lockheed hiring managers, supervisors, and at least one representative from human resources conducted the interviews. To promote consistency, the panel asked each interviewee the same five questions. Afterwards, the panel assigned an overall score to the interviewees, based on their performance in the skills assessment, workmanship reviews, and interviews. In every instance, Lockheed hired those individuals with the highest overall scores.

Ultimately, Lockheed hired 387 former DS2 employees. 172 were over forty years old. Of those 172 hires, 106 were forty-seven or over; seventy-five were fifty or over; and fifty-two were fifty-four or older.

Plaintiffs Johnson, Stakelin, Walker, Prather, and Thompson, all former DS2 employees, applied for – but did not get – a position. We discuss each plaintiff's situation in turn.

A. Dedra Johnson

At the time of the transition, Johnson was fifty-three years old and working for DS2 as an Exhibits Specialist II in the Finishing Shop. Lockheed supervisor Jerry Booth oversaw Johnson's work and selected which Finishing Shop employees to hire.

In keeping with its decision to downsize the workforce, Lockheed completely eliminated the Exhibits Specialist II position, and kept positions for one Exhibits Specialist I, three Exhibits Specialists III's, and three Maintenance Trades Helpers. As a result, only about half of the then-DS2 Finishing Shop employees kept a position after the transition.

Johnson applied for two positions: Exhibits Specialist III and Maintenance Trades Helper. Because her scores on the applicable skills assessment matrices were lower than those of other DS2 applicants, Booth did not interview Johnson for either position. Booth also noted Johnson had a significant number of write-ups for non-conforming work product.

Lockheed hired at least one person older than Johnson for both positions. Of the three Exhibits Specialist III hires, one, Gary Adams, was a year older than Johnson. Of the five Maintenance Trades Helpers hired, one new hire, Jackie Shuler, was a year older than Johnson, while another new hire was only four years younger than she. Lockheed also hired people for both positions who were more than six years younger than Johnson.

B. Al Stakelin

In August 2011, Stakelin was fifty-four years old and worked for DS2 as an NC Machine Operator II in the Machine Shop. Stakelin applied for a position as an NC Machine Operator II in Sean Wallace's and Robbie Adams's areas, as well as for a position as an Aircraft Mechanic I in Damon Evans's area on Aviation Hill.

Neither Adams nor Wallace interviewed Stakelin for the NC Machine Operator II position because his skills assessment score was lower than those of the other applicants.  They also noted Stakelin lacked "versatility" on the various machines in the shop.  Adams, the Machine Shop supervisor since June 2006, had seen Stakelin operate only one of the shop's machines.

Of the DS2 employees hired from the Machine Shop, one, Don Coffey, was sixty-four at the time – ten years older than Stakelin.  Lockheed also hired individuals for the NC Machine Operator II position who were more than six years younger than Stakelin.

Just as with the NC Machine Operator II position, Evans declined to interview Stakelin for the Aircraft Mechanic I position because of his low skills assessment score in comparison with the other applicants.  Stakelin, having worked only as an NC Machine Operator II in the Machine Shop, had no experience as an Aircraft Mechanic or in another, similar position.

Of the individuals hired as Aircraft Mechanic I's, five were older or not more than six years younger than Stakelin, including Albert DeRonda (sixty-seven), Douglas King (fifty-one), Brett Rease (fifty-one), Derek Martin (fifty), and Kenneth Martin (forty-nine).

Finally, Stakelin stated that no one at Lockheed ever made any comments that caused him to believe that Lockheed was biased against older workers or that age played a role in its hiring

decisions. He felt Lockheed's hiring process was, however, unfair because it allowed the company to hire workers whom it liked personally, rather than hiring only the most skilled individuals.

C. Randall Prather

Prather was fifty-three years old and worked for DS2 as an NC Machine Operator II. Sean Wallace was the Lockheed supervisor in Prather's area. Prather applied for several positions during the transition, including NC Machine Operator I and II, Sheet Metal Worker, and Maintenance Trades Helper.

Wallace did not interview Prather for the NC Machine Operator I and II positions because Prather's score on the skills assessment was lower in comparison to other applicants. Lockheed did interview him for the Sheet Metal Worker and Maintenance Trades Helper positions in the Finishing Shop and "LBUR" and "Deburr" areas. Prather received combined scores of 42.1% for Sheet Metal Worker, 57.5% for Maintenance Trades Helper in the Finishing Shop, and 70.0% for Maintenance Trades Helper in the "LBUR" and "Deburr" areas.

Each DS2 applicant whom Lockheed hired for these positions had higher scores than Prather. The lowest scores for successful applicants were 45.61% for Sheet Metal Workers, 78.7% for Maintenance Trades Helpers in the Finishing Shop, and 86.6% for Maintenance Trades Helpers hired in the "LBUR" and "Deburr" areas.

For every position for which Prather applied, Lockheed hired someone who was either older or around the same age as Prather: Don Coffey (sixty-four) as an NC Machine Operator; Michael Maze (fifty-three) and Oran Gilvin (fifty) as Sheet Metal Workers; and Jackie Shuler (fifty-four), Stephen Robinson (fifty-one), and Billy Hibbard (forty-nine) as Maintenance Trades Helpers.

Lockheed also hired individuals for each position who were more than six years younger than Prather.

Prather did not hear anything from any Lockheed employees that made him think age played a role in the decision not to hire him. Instead, he opined that the hiring process should have been based on seniority, and speculated that perhaps Lockheed wanted to hire younger workers because they were more likely to do what they were told.

D. Mae Lee Walker

Walker was sixty years old at the time of the transition and worked as an Electronics Technician I in the Cable Fab Shop. Walker applied to continue her position as Electronics Technician I, and Jim Thomas was the Lockheed supervisor in charge of hiring decisions in that area.

Thomas did not select Walker for an interview because of her low skills assessment score relative to the other DS2 employees who applied. Lockheed also noted that many of the individuals it hired to fill this position had special training, military backgrounds, or were simply good at their jobs. Moreover, approximately sixty people worked for DS2 as Electronic Technician I's in the Cable Fab Shop, but Lockheed hired only thirty-two – a reduction of nearly half.

Of the thirty-two people Thomas hired as Electronic Technician I's for the Cable Fab Shop, five were older than Walker and eleven were less than six years younger than she.

Throughout the process, Walker never heard or saw anything that made her think Lockheed was biased against older workers, and no one at Lockheed mentioned age as a factor in hiring decisions. Like Prather, Walker expressed her belief that the hiring decisions should have been

based on seniority, and thought some individuals were only hired because they had friends at Lockheed.

E. Shelby Thompson

In August, 2011, Thompson was sixty years old and an Aircraft Mechanic III in the "Back Shop" in Richmond, Kentucky. Lockheed decided to hire only Aircraft Mechanic III's for its offices in Avon. Instead of applying for the Aircraft Mechanic II positions still available in Richmond, Thompson applied for the Aircraft Mechanic III position in Avon, where Evans served as the Lockheed hiring manager.

Evans selected Thompson for an interview based on his skills assessment score. During the interview, Evans found that Thompson came across as disinterested and acted as if he should not have to sit for an interview. His conduct translated into a low score of six points out of a possible fifteen for his answers to the five interview questions.

Thompson's overall score for the skills assessment, workmanship, and interview responses was 85%. Evans did not hire anyone for the Aircraft Mechanic III position with a score lower than 90%.

Of the twenty-one people hired to fill the Aircraft Mechanic III positions, one of the individuals, James Mosbey (sixty-four), was older than Thompson. The remaining twenty hires were more than six years younger than Thompson.

No one at Lockheed ever made a statement to Thompson that made him think Lockheed was biased against older workers.

II.

We review the district court's grant of summary judgment *de novo*. *Scheick v. Tecumseh Pub. Schs.,* 766 F.3d 523, 528 (2014). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "In reviewing the district court's decision, this court draws all justifiable inferences in favor of the non-moving party." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 718-19 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The same analysis applies to claims brought under the ADEA and KCRA. *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 393 (6th Cir. 2008). The ADEA and the KCRA both prohibit employers from failing to hire, discharging, or otherwise discriminating against an individual because of age. 29 U.S.C. § 623(a)(1); KRS § 344.040(1)(a).

Absent direct evidence of age discrimination, plaintiffs can establish a *prima facie* case with circumstantial evidence by showing they were 1) at least forty years old at the time of the alleged discriminatory act; 2) subject to an adverse employment action; 3) otherwise qualified for the position; and 4) rejected in favor of a substantially younger person. *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010).[1] A "substantially younger"

---

[1] The district court ruled that, in the context of multiple hires for the same position, plaintiffs cannot establish a prima facie case of age discrimination when the employer hires at least one person older or not substantially younger than each plaintiff for the positions for which they applied. Resting our holding on pretext grounds, we decline to adopt the district court's rule in light of *Connecticut v. Teal*, 457 U.S. 440 (1982), and *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711 (6th Cir. 2006), which held that employers cannot escape liability for discrimination simply because they did not discriminate against every member of a protected class in their employment decision.

person is someone more than six years younger than the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003).

If plaintiffs establish their *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). Once done, the burden of production returns to the plaintiffs to prove the employer's nondiscriminatory explanation was a pretext for intentional age discrimination. *Id.*

To establish pretext, plaintiffs must show the proffered reason 1) had no basis in fact; 2) did not motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007). "[I]f the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred," the employer is entitled to summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Here, while plaintiffs acknowledge that Lockheed articulated legitimate, nondiscriminatory reasons for its conduct, they have not provided any facts showing that these reasons were pretextual. The only explanation plaintiffs offer is that Lockheed must have discriminated against them because its hiring process was subjective and did not adequately account for their skills. But plaintiffs' disagreement with Lockheed's assessment of their performance – and their belief that the hiring system should have been based on seniority – does not render Lockheed's hiring decision pretextual. *McDonald v. Union Camp Corp.*, 898 F 2d. 1155, 1162 (6th Cir. 1990). Absent additional evidence,

plaintiffs' beliefs about their own qualifications "cannot sustain a claim of discrimination." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

Lockheed, tasked with hiring almost 400 employees in a month, devised a hiring system based on scores from skills assessments, workmanship reviews, and panel interviews. Accordingly, Lockheed supervisors completed a skills assessment matrix for the DS2 employees in their area. From those scores, Lockheed offered some applicants interviews. The panel asked every interviewee the same five questions, and assigned a score based on the interviewee's responses. Lockheed then extended job offers to those with the highest combined scores.

Lockheed considered plaintiffs Johnson, Stakelin, Walker, Prather, and Thompson for their sought-after positions. And it did so in accordance with its uniformly applied scoring system.

Lockheed did not interview Johnson, Stakelin, and Walker because their skills assessment scores were lower than those of the other applicants. Lockheed supervisors further noted that Johnson had a number of write-ups for nonconforming work product, while Stakelin lacked versatility on the machines necessary to perform the position he wanted.

Prather applied for four positions during the DS2 transition: NC Machine Operator I and II, Sheet Metal Worker, and Maintenance Trades Helper. Although Lockheed declined to interview him for the NC Machine Operator I and II positions due to his low skills assessment score, it did interview him for the other two positions. Nevertheless, because other applicants had higher combined scores after the interview assessment, Prather was not hired.

Based on Thompson's skills assessment score, Lockheed interviewed him for the one position he applied for, Aircraft Mechanic III. During the interview, the panel found that Thompson came across as disinterested and haughty about having to apply for the position. After the interview,

-10-

Thompson's total assessment score was 85%. Lockheed did not hire anyone for the Aircraft Mechanic III position who had a score lower than 90%.

Lockheed designed and implemented a process that, while taking a necessarily subjective assessment of skills into account, otherwise sought to suppress subjectivity in its decision-making. From the record before this Court, it appears that Lockheed undertook to apply its process uniformly as it assessed each applicant. Plaintiffs have not presented evidence to the contrary – such as expert opinion, or anything else – that could lead a rational jury to conclude age was the real reason Lockheed declined to hire plaintiffs.

III.

Because plaintiffs have failed to demonstrate a genuine dispute of material fact as to pretext, we affirm the district court's summary judgment grant to Lockheed.