NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0036n.06

No. 20-1267

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LORI ANN DREWS, | ) | **FILED** |
|  | ) | Jan 15, 2021 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| BERRIEN COUNTY, MICHIGAN, | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) |  |
|  | ) |  |

Before: GUY, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Lori Drews had a lengthy career at the Berrien County Road Commission. Most recently, she worked as its payroll specialist. But when the local county government, which had its own payroll staff, absorbed the Road Commission, Drews' position was eliminated. Drews was terminated, and she sued Berrien County for age discrimination. The district court granted summary judgment in favor of the County. For the reasons below, we AFFIRM.

I.

Lori Drews was born in 1960. From 1982 to 2017, she worked for the Berrien County Road Commission. The Commission managed local road maintenance and was an independent municipal entity, separate from the Berrien County government.

Drews had a variety of responsibilities during her tenure at the Road Commission. Around 2008 or 2009, she became the payroll specialist. In that position, Drews processed timesheets, checked them for accuracy, issued paychecks, and handled a wide array of administrative tasks.

In 2012, the Michigan Legislature gave county governments the option to dissolve their local road commissions, assume the commissions' responsibilities, and receive the associated funding directly. *See* Mich. Comp. Laws § 224.6(7). Shortly afterward, the Berrien County Board of Commissioners directed County Administrator William Wolf to study the feasibility of integrating the Road Commission into the county government. Wolf completed the study in 2013 and found that a takeover of the Road Commission would be doable. The County did not act on Wolf's findings at the time, but in 2017, it directed Wolf to update his study. After Wolf completed his renewed study and the County held public hearings, the Board of Commissioners approved the takeover. With that vote, the Road Commission became the Road Department, now under the umbrella of the Berrien County government. Drews and the other Road Commission employees became employees of the County.

Soon after the County took over the Road Commission, Drews' position was eliminated. To reduce the spending increase that the takeover would cause, the 2013 and 2017 feasibility studies had recommended consolidating Drews' position with existing County payroll staff. The County had determined that its own Human Resources Department, which handled payroll for about seven hundred employees before the takeover, would be able to service the additional sixty-five to seventy former Road Commission employees. Drews worked for the County for about two months while the County transitioned these new employees into the County's payroll system. After this transition period, the County informed Drews that her role would be performed by the Human Resources Department. Drews was terminated. Other than the Road Commissioners

themselves, Drews was the only employee who lost her job in the County's takeover of the Road Commission.

Drews sued the County in federal court, alleging that the County terminated her employment based on her age in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.* After discovery, the district court granted the County's motion for summary judgment on both claims. Drews timely appealed.

## II.

We review the district court's grant of summary judgment de novo. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917 (6th Cir. 2014). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on evidence in the record. Fed. R. Civ. P. 56(a), (c). The non-movant has the burden to show that the record contains sufficient evidence to allow a reasonable jury to rule in the non-movant's favor on each "element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the evidence and draw all reasonable inferences in the manner most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The ADEA and ELCRA prohibit employers from discriminating against employees based on age. 29 U.S.C. § 623(a)(1); Mich. Comp. Laws § 37.2202(1)(a). We analyze discrimination

claims under both statutes using the same framework. *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015).[1]

When, as here, an age discrimination claim is based on circumstantial evidence, we apply the *McDonnell Douglas* burden-shifting framework. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). First, Drews must establish a *prima facie* case of age discrimination. *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006). If she does so, Berrien County must "articulate some legitimate, nondiscriminatory reason" for letting her go. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *McDonnell Douglas*, 411 U.S. at 802). Drews must then produce evidence that could allow a jury to find that the proffered reason is a pretext designed to mask discrimination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 & n.4 (6th Cir. 2009). To survive Berrien County's motion for summary judgment, Drews must show that "there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citation omitted).

We need not decide whether Drews has made a *prima facie* case of age discrimination. Even assuming that she has, the County provides a legitimate reason for her termination, and Drews fails to create a genuine dispute on the issue of pretext. *See, e.g., Lefevers v. GAF*

---

[1] The ADEA requires that a discriminatory act be the "but-for" cause of an adverse employment action. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). In *Hecht v. National Heritage Academies, Inc.*, the Michigan Supreme Court "reaffirm[ed]" its caselaw interpreting the ELCRA to require "'but for causation' or 'causation in fact.'" 886 N.W.2d 135, 146 (Mich. 2016) (quoting *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 589 (1986)). *But see Hrapkiewicz v. Wayne State Univ. Bd. of Governors*, 910 N.W.2d 654, 654 (Mich. 2018) (Markman, C.J., dissenting from denial of leave to appeal) (noting that some prior Michigan cases applied a "motivating factor" test, *see Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 522 (Mich. 2001), and urging the court to grant leave to resolve the inconsistency). Even if the more lenient, "motivating factor" standard applied, however, our analysis of Drews' claims would be substantially the same on this record.

*Fiberglass Corp.*, 667 F.3d 721, 725–26 (6th Cir. 2012) (assuming existence of *prima facie* case and awarding defendant summary judgment due to plaintiff's failure to show a genuine dispute about pretext).

The County says that Drews' position was eliminated because her duties were transferred to the County's existing Human Resources Department after the takeover. We have repeatedly recognized the consolidation of job duties as a legitimate, nondiscriminatory reason to terminate an employee. *See, e.g.*, *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 482–83 (6th Cir. 2014); *Geiger*, 579 F.3d at 626; *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). This is true even when the person who loses his or her job had a positive performance record. *See Jones v. SKF USA, Inc.*, 77 F. App'x 866, 868 (6th Cir. 2003) (citing *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1129 (6th Cir. 1998)).

Drews can establish pretext if she can show that the County's stated reason for terminating her (1) had no basis in fact, (2) did not actually motivate its decision, or (3) was insufficient to motivate its decision. *Chen*, 580 F.3d at 400. Drews argues that the County's reason for eliminating her position has no basis in fact because the County payroll clerk, Olivia Nichols, did not assume all of Drews' responsibilities. In support, Drews points to the hiring—nearly a year after her departure—of two additional Road Department employees, Andrew Pudell and Adri Boone. Drews suggests that these hires show that, even after the takeover, the County still needed additional staff to perform Drews' former duties. In her view, then, there was no real consolidation of her position.

Undisputed evidence paints a different picture. "Although we are required to view the evidence in the record in the light most favorable to the non-moving party, [Drews], we are not required to accept [her] unsubstantiated gloss on the evidence." *Noble v. Brinker Int'l, Inc.*,

391 F.3d 715, 729 (6th Cir. 2004). After Drews was let go, Nichols shouldered many, though not all, of Drews' former responsibilities. And existing Road Department employees took over the tasks that Nichols did not. For example, Nichols did not participate in the Road Department's process for verifying that its employees' timesheets allocated hours to the correct projects for statutory reporting purposes.[2] Drews and Kari Bennett, the finance director of the Road Department (and, formerly, of the Road Commission) gave conflicting testimony about whether Drews had ever been responsible for verifying this aspect of the timesheets. Even assuming she had been, Drews does not dispute that, after her termination, each Road Department employee's immediate supervisor was responsible for verifying this timesheet information. Additionally, Drews used to consolidate Road Department timesheet data for use in subsequent payroll processes. After Drews left, the consolidation of the timesheet data fell to Bennett. So, the record indicates that existing County employees were able to fulfill all of Drews' duties.

Drews points to the hiring of Pudell and Boone as evidence that her job functions were not, in fact, absorbed by existing employees. But these two were hired only after the Road Department, months later, replaced its managing director. The new director altered the allocation of responsibilities among the Road Department staff, eventually making these two hires necessary. By the time Pudell and Boone joined the Road Department, Drews had been gone nearly a year. Even if Pudell and Boone's responsibilities overlap with parts of Drews' old role, it is undisputed that significant payroll functions for Road Department employees remain with Nichols and the Human Resources Department. The addition of two employees nearly a year after Drews' departure and in the wake of a change in management does not call into doubt the County's

---

[2] Michigan law required the Road Department (and, previously, the Road Commission) to generate detailed reports about its spending on various types of projects. *See generally* Mich. Comp. Laws § 247.665.

explanation for firing Drews. This record would not allow a reasonable jury to conclude that a consolidation did not occur or that the County's justification for the consolidation was pretextual.

Next, Drews argues that the County's explanation for eliminating her position has no basis in fact because the 2017 feasibility study overstated the savings that would result from eliminating her position. It is true that the 2017 study put the potential savings at $87,000 and Drews' salary was only $42,000. But the 2013 feasibility study, which also recommended eliminating Drews' position, projected a more accurate cost reduction of $45,000. Moreover, regardless of any miscalculation, the County acted on its reasonable understanding that Drews' position was redundant at the time it terminated her, as explained above. *See Blizzard*, 698 F.3d at 286 (citing *Escher v. BWXT Y–12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)). Therefore, any error does not create a genuine dispute about pretext. *See id.*

Relatedly, Drews suggests that the County has offered shifting explanations for the takeover and for eliminating her position. She asserts that the takeover was to be a cost-saving project and that the County later attempted to justify its failure to generate savings by claiming that the real purpose of the takeover was "good government." But the County has been consistent in its reasoning. Both the 2013 and 2017 studies indicated that the takeover would increase the County's annual expenditures, even accounting for the Road Commission's own funds. And "good government" was the County's stated focus even before the takeover occurred. Both feasibility studies opened with an exhortation about how the takeover decision should not come down to "cost" but, instead, should be based on whether "the result [will] be better service to the residents of Berrien County." The County's decision to cut costs where it could, including by eliminating the redundant payroll position, is entirely consistent with an overarching focus on "good government." *Cf. Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir.

1998) (explaining that employer's reasons "all revolve[d] around a single idea" and "Plaintiff's position could no longer be justified" (internal quotation mark omitted)).

Drews also argues that she must have been singled out on the basis of age because she was not notified that she would be terminated in time to apply for an open position with the County's Human Resources Department. Several months before the takeover and before Drews was terminated, the County's payroll specialist, Betty Bauer, decided to retire. Drews had access to the County's online job posting seeking a replacement for Bauer, but she did not see it. Drews testified that she had no reason to be looking for other work because she did not know that she would be terminated. After interviewing several applicants, the County hired Nichols who at the time was forty-one, about sixteen years younger than Drews. Drews claims that she was more qualified than Nichols. Therefore, Drews contends, the County's failure to notify her of her coming termination in time to allow her to apply for Bauer's job betrays the County's age-based bias.

We are not persuaded that a reasonable jury could find age-related bias on these facts. The County's head of Human Resources, Shelley Jasper, maintained a policy against reaching out to specific individuals to solicit job applications; she did this to preserve her impartiality. Drews does not dispute that this was Jasper's policy. Moreover, when the County started to seek a replacement for Bauer, Drews was not even a County employee, and the Board of Commissioners had not yet approved the takeover. The County's failure to take affirmative steps to invite Drews to apply for a posted, open position does not support a finding of pretext. *See Browning*, 436 F.3d at 698 (explaining that courts will not question neutral hiring criteria); *Barnes*, 896 F.2d at 1472 ("An employer is not required to inform former employees of all openings which the former

employee might be qualified to perform in order to avoid liability for an age discrimination charge.").

Last, Drews argues that alleged age-related comments from her co-workers are evidence of pretext.[3] Various co-workers remarked on her age. They would say, "[S]he's been here since before Christ, ask Lori"; "Lori's been here when dinosaurs roamed the earth—she'll know where it's at"; "Lori you're old enough to be our mother"; and "Why are you even still working? . . . At [your] age, why would [you] want to?" She received comments like these both before and after the County absorbed the Road Commission.

Even taken in the light most favorable to Drews, these comments and others like them could not allow a reasonable jury to conclude that the County's stated reason for terminating Drews was a pretext designed to mask age discrimination. "We have held that discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) (citing *Ercegovich*, 154 F.3d at 356–57). But "[a]ctions by nondecisionmakers cannot *alone* prove pretext." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (en banc) (emphasis added) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). "Neither can decisionmakers' statements or actions outside of the

---

[3] Drews avers that these comments might also be direct evidence of age discrimination. Direct evidence of discrimination is evidence that "if believed, requires the conclusion" that the employer was predisposed to discriminate based on age and, in fact, did so. *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014). The context and substance of the comments at issue here do not require the conclusion that Drews was terminated due to age. *See Geiger*, 579 F.3d at 621–22. To find that these comments support her ADEA and ELCRA claims, we would have to draw an inference that the comments betray some suspicious motive behind the County's decision to remove Drews' payroll position. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Direct evidence, by contrast, "proves the existence of a fact without requiring any inferences." *Id.* Therefore, the alleged comments from Drews' coworkers about her age are only circumstantial evidence.

decisionmaking process." *Id.*[4] Drews attributes no derogatory comments to Wolf, who wrote the studies that suggested eliminating her position if the takeover occurred. Nor does Drews attribute any negative age-related statements to the county commissioners, who approved the takeover plan.

Drews argues that employees who made these statements influenced Wolf in writing his feasibility studies and that, therefore, the termination decision was tainted. Wolf did consult with several County and Road Commission employees in connection with the feasibility studies. Only a few of the individuals he consulted are relevant here. He sought input from Louis Csokasy, managing director of the Road Commission, for the 2017 feasibility study. He also may have consulted Bennett and the Road Commission's superintendent, Don Geisler. Drews listed Csokasy and Geisler as two of the individuals who made offensive comments about her age. She also claims that Bennett would "listen and laugh" while others made these comments.

But nothing in the record connects the alleged comments from Csokasy, Geisler, and others to the decision to eliminate the payroll position. Wolf's original finding that the takeover would allow for the elimination of the payroll position was part of his 2013 report, which was written before Csokasy and Bennett were even hired. Drews admitted that she does not "have any information that suggests" that Csokasy or Geisler "had any input" on the decision to terminate her. Drews has not provided evidence that could allow a jury to conclude that negative comments

---

[4] *Compare Bush*, 161 F.3d at 369 (finding that "allegedly discriminatory comments made by company officials who had nothing to do with Bush's termination, or alleged conduct by Bush's supervisors that was either remote in time or of unarticulated relevance" could not establish pretext), *and Rowan*, 360 F.3d at 548–50 (finding that remarks by decisionmakers and nondecisionmakers outside the decisionmaking process did not show that other well-supported reasons for termination were pretextual), *with Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 323–24 (6th Cir. 2019) (finding a dispute as to pretext where a "smoking gun" email was written at the direction of a key decisionmaker almost immediately after the plaintiff's termination), *and Ercegovich*, 154 F.3d at 357 (finding a genuine dispute as to pretext where both decisionmakers and other senior employees made comments hostile toward older workers shortly before the plaintiff's position was eliminated).

about her age were the proximate cause of her termination or that the employees who made those comments played a part in that decision. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011); *Ford Motor*, 782 F.3d at 768–69; *Bush*, 161 F.3d at 369.

Drews has failed to create a genuine dispute as to whether the County's stated reason for terminating her was pretextual.

\* \* \*

We AFFIRM the district court's grant of summary judgment in favor of Berrien County.