**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0384n.06**
**Filed: May 31, 2006**

**No. 05-3991**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALBERT SCOTT, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| JOHN E. POTTER, POSTMASTER GENERAL OF | ) | **O P I N I O N** |
| THE UNITED STATES POSTAL SERVICE, ET | ) | |
| AL., | ) | |
| | ) | |
| Defendants-Appellees. | | |

**BEFORE:** **KENNEDY, COLE, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** When this lawsuit was filed, Albert Scott worked as a full-time mail handler at the Cincinnati Bulk Mail Center, U.S. Postal Service (the "Service"). He began his employment with the Service in 1966. The Service terminated his employment in February 2002. After an arbitration hearing, the Service reinstated Scott. This lawsuit centers around the events leading up to his termination.

Scott asserts that his termination resulted from various illegal acts by the defendants, including age discrimination and retaliation. The district court disagreed, finding that Scott failed to make out his *prima facie* case for any of his claims. We affirm.

**I.**

It is clear from the facts of this case that Scott and his supervisor, Jerry Seale, did not get along. While there does not appear to have been hostilities between the two when Seale first became Scott's supervisor in the mid-1990s, by early 1999, the two began having problems. Scott attributed the change to the fact that he started dating Joyce Staples, the ex-girlfriend of Seale's brother, in 1999. Scott testified that Seale started to follow him around and harass both him and Staples.

Another key aspect of this case is that Scott was, by all accounts, a prolific grievance filer. In addition to filing grievances on his own behalf, he filed grievances on behalf of other employees and assisted them in filing their own grievances. Scott also filed numerous complaints under the Equal Employment Opportunity Act, referred to by the parties as "EEO actions" or simply "EEOs."

Scott filed several grievances against Seale in 1999, all of which involved either allegations of union collective bargaining agreement and safety violations, or issues involving his relationship with Staples. Scott testified that he also filed "three or four" EEOs against Seale in 1999 and 2000, alleging age discrimination and retaliation. (He did not, however, include copies of these EEOs in the record before us.)

Problems flared up between the two again in October and November 2001, this time involving allegations that Scott spent excessive time in the rest room, and that Seale violated the union's rules on overtime opportunities. A month later in December 2001, the two were involved in another incident, the one which directly led to this lawsuit.

On December 12th, Scott was driving a forklift. Seale walked towards Scott. According to Seale, Scott then deliberately turned the forklift in Seale's direction. Seale had to jump out of the way to avoid being hit. He alleged that Scott had a smile on his face during the encounter.

Scott's account differed. According to him, he was driving in a safe manner, but that Seale began yelling at him for no reason. He denied intentionally trying to hit Seale.

The following day, Seale placed Scott on emergency off-duty status, citing the prior day's incident as grounds. Several days later, Seale notified Scott that he would be terminated from the Service, effective February 1, 2002.

Scott grieved both the emergency leave and termination. While unsuccessful at the administrative level, he did earn a partial victory in arbitration. The arbitrator found that Scott had engaged in unsafe behavior, but ordered he be reinstated in light of his many years of service. The arbitrator specifically declined to award back pay, though, because Scott had "intentionally committed clear and serious violations of established [workplace] safety rules."

Scott filed a complaint with the EEOC, which was denied. He then brought this instant action, alleging retaliation, age discrimination, reverse racial discrimination, disparate impact, hostile work environment, sexual harassment, and a *Bivens* claim. Both sides consented to having the matter heard before a magistrate judge. On the defendants' motion, the magistrate judge granted them summary judgment. Scott timely appealed.

**II.**

"We review *de novo* the district court's grant of summary judgment" for defendants. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 252 (6th Cir. 2000). Summary judgment is justified "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  We consider the evidence

and draw all reasonable inferences in favor of the nonmoving party. *Mahon v. Crowell*, 295 F.3d

585, 588 (6th Cir. 2002).

### A.      Claims Not Raised on Appeal

Scott does not raise on appeal any issues involving his reverse racial discrimination,

disparate impact, hostile work environment, sexual harassment, or *Bivens* claims.  "Issues which

were raised in the district court, yet not raised on appeal, are considered abandoned and not

reviewable on appeal." *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (citing *Enertech Elec.,*

*Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir. 1996)).

### B.      Retaliation

As his first issue on appeal, Scott argues the magistrate judge erred in granting the

defendants summary judgment on his retaliation claim.  Employers may not retaliate against an

employee for engaging in activity protected under Title VII of the Civil Rights Act of 1974 ("Title

VII"), 42 U.S.C. § 2000e-3(a), or the Age Discrimination in Employment Act of 1967 (the

"ADEA"), 29 U.S.C. § 623(d).  Retaliation claims are subject to the *McDonnell-Douglas* burden-

shifting framework. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993) (ADEA); *Wrenn v.*

*Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (Title VII).  Initially, to establish a *prima facie* case of

retaliation, an employee must show that:

> (1) he engaged in activity protected by Title VII [or the ADEA]; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted). As we have

explained, "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but

one easily met." *Id.* (citation omitted). If the employee meets the initial burden, the burden of

production then shifts to the employer to provide a legitimate, non-discriminatory reason for its

conduct. *Balmer v. HCA, Inc.*, 423 F.3d 606, 614-15 (6th Cir. 2005). The ultimate burden of

persuasion, however, rests with the employee to show that the proffered rationale by the employer

was just a pretext for its retaliatory actions. *Id.*[1]

---

[1]There is a question – not addressed by either party – whether the federal government has waived sovereign immunity to claims of age-related retaliation by its employees. Courts have differed on the answer. *Compare Forman v. Small*, 271 F.3d 285, 298-99 (D.C. Cir. 2001) ("[W]e hold that [29 U.S.C.] § 633a waives sovereign immunity as to claims of retaliation), *with Cyr v. Perry*, 301 F. Supp. 2d 527, 535 (E.D. Va. 2004) ("[B]ecause § 633a of the ADEA contains no express and unequivocal language that waives sovereign immunity with respect to retaliation claims, plaintiff's claims for retaliation under the ADEA are barred by sovereign immunity and must be dismissed."). While § 633a of the ADEA does not expressly prohibit retaliation by federal employers, the implementing regulations do: "No person shall be subject to retaliation for opposing any practice made unlawful by . . . the Age Discrimination in Employment Act . . . ." 29 C.F.R. § 1614.101(b). Moreover, Scott is an employee of the Service, which has a unique relationship with the federal government. As we have explained before, Congress "removed the mantle of sovereign immunity" from the Service when it enacted The Postal Reorganization Act of 1970. *Forest v. U.S. Postal Serv.*, 97 F.3d 137, 142 (6th Cir. 1996) (citation omitted).

We need not answer the question here. Although the sovereign-immunity question is a jurisdictional one, we have discretion to address first the merits of the underlying claim. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) ("[U]nder any circumstances in which the State (or the United States) declines to raise sovereign immunity as a threshold defense, we conclude that the federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer."); *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1000 (D.C. Cir. 1999) (finding that "a less than pure jurisdictional question" like

### 1.      Protected Activity

In determining whether Scott has made his *prima facie* case, we must first distinguish

between his protected activity and his unprotected activity. "Protected activity" refers to opposing

any practice made unlawful under Title VII or the ADEA, or making a charge, testifying, assisting,

or participating in any manner in an investigation, proceeding, or hearing under Title VII or the

ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). The record does not contain an exhaustive

account of the administrative grievances Scott filed prior to the adverse actions, or, more

importantly, the subject matter of the grievances. Of those grievances that he has included in the

record or has provided some specific description, none involve matters protected by either Title VII

or the ADEA. Rather, they all appear to concern matters covered under his union's collective

bargaining agreement, including workplace safety and overtime hours, or the relationship between

Scott and Staples. The only evidence of protected activity in the record is Scott's deposition

testimony in which he estimated that he filed "three or four" EEOs in 1999-2000 because of age

discrimination and retaliation.[2]

---

federal sovereign immunity "need not be decided before a merits question") (internal quotations
omitted). The Tenth Circuit took a similar avenue by refusing to pause "to examine whether any
action for retaliation is permissible at all under § 633a." *Villescas v. Abraham*, 311 F.3d 1253, 1258
(10th Cir. 2002).

[2]During oral argument, Scott's counsel stated that his client had assisted other employees
with their protected activity in September, just a few months before his discharge in December 2001.
There is no mention of this activity nor any citation to the record in his appeal brief. Counsel
referred us during argument to Scott's brief in opposition to the defendants' motion for summary
judgment below. We have reviewed the brief and the attachments included in the record before us,
and find no evidence to support counsel's supposition. Indeed the only reference we were able to
find to this activity is Seale's testimony that he was aware of Scott's EEO activity and that Scott
filed EEO complaints every time he did not "get his way."

### 2.     Causal Connection

We next turn our attention to whether there was a causal connection between the protected activity and the adverse actions about which Scott complains. "To establish the causal connection . . ., a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discriminatory action." *Nguyen*, 229 F.3d at 563 (citations omitted). Causation can be inferred from indirect or circumstantial evidence, such as "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id.* (citation omitted). To survive summary judgment, the evidence of causation must be "sufficient to raise the inference that [the plaintiff's] protected activity was the *likely reason* for the adverse action." *Zanders v. Nat'l R.R. Passengers Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotations omitted, emphasis added).

Scott's claim rests primarily on his emergency-leave placement and subsequent termination. There is no doubt that these actions were adverse employment actions. We find, however, that the time lag between his EEO activity and these adverse actions is too long, without more, to establish a causal link. Scott filed his EEOs in 1999 and 2000, but was not placed on emergency leave and notified of his termination until December 2001. The extensive time lag negates any inference that Scott's protected activity led to the defendants' subsequent actions. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation."); *see also Nguyen*, 229 F.3d at 566-67 (explaining that "previous cases that have permitted a *prima facie* case

to be made based on the proximity of time have all been short periods of time, usually less than six months") (quoting *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997)). Scott has offered no objective evidence to support his causation theory or explain the long time lag.

Scott also alludes to other adverse actions by Seale. He states in a letter written on December 13, 2001, that he was able to settle the earlier EEOs he filed "[w]ith the understanding that there would be no retaliation," but that "[a]s soon as Seale found out about the settlements, he would start all over again." We find that this assertion of adverse action is too vague to withstand scrutiny. Scott fails to support the statement with any *specific* evidence of adverse employment actions closely following the "three or four" EEOs. His conclusory statement that Seale harassed him is insufficient to create a genuine issue of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000) (explaining that a plaintiff cannot establish a *prima facie* case based on "vague, ambiguous, or isolated remarks").

As Scott failed to provide evidence sufficient to create a genuine issue of material fact on the issue of causation, the magistrate judge properly granted summary judgment to the defendants on the claim of retaliation. We turn next to Scott's claim of age discrimination.

### C.    <u>Age Discrimination</u>

To support his age-discrimination claim, Scott must either present direct evidence of discrimination or satisfy the *McDonnell-Douglas* burden-shifting analysis. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (citation omitted). Scott relies solely on the former method.

To succeed on a "direct evidence" claim, a plaintiff must come forward with direct evidence that "an illegitimate criterion" – e.g., a person's age, race, or sex – "was a substantial factor" in the adverse employment action. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring), *maj. op. overruled by statute on other grounds*, § 107 of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. If such evidence is presented, the burden then shifts to "the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." *Id.*

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Minadeo*, 398 F.3d at 763 (quoting *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004)). Specifically, direct evidence of discrimination is "evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision." *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 (8th Cir. 2001) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age," satisfy this criteria. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

As direct evidence of age discrimination, Scott points to the following remark purportedly made to him by Seale: "Why don't you retire and make everybody happy." This statement alone does not, however, constitute direct evidence of age discrimination. If, for example, Seale had made a slightly different remark – "Why don't you quit and make everybody happy" – it would obviously not be direct evidence of age discrimination – the hypothetical statement does not refer to age or

anything related, even tangentially, to age. Several inferences would have to be made to jump from the statement ("quit") to a discriminatory animus ("quit because you're too old"). Thus, Scott's claim must rest upon the notion that the term "retire" itself somehow directly references or necessarily means a person's age.

To "retire" as opposed to "quit" usually brings to mind a voluntary separation from employment based on, among other things, an employee's years of service. Yet, "years of service" is conceptually distinct from "age." While both terms apply to many of the same individuals in various contexts, the overlap is not perfect. An older employee might, for example, be a new hire with a particular employer, and therefore have only a couple of years of service. Alternatively, a younger employee might have worked at one employer since graduating high school, and therefore have a relatively long period of service with that employer. *See Hazen Paper*, 507 U.S. at 611. It is true that younger workers typically do not "retire" from an employer, while older workers typically do. Yet, it is this "typicality" rather than "identity" which requires that an inference be drawn before "Why don't you retire" can become evidence of a discriminatory animus like "Why don't you retire; you're too old." *See, e.g.*, *Davidson v. Quorum Health Group, Inc.*, 1 F. Supp. 2d 1321, 1325 (N.D. Ala. 1997) (finding the statement "you are old enough to retire, you ought to get on out of here" disparaging, but not direct evidence of discriminatory animus). In short, "retire" and "age" are not synonyms. *Cf. Hazen Paper*, 507 U.S. at 611 ("Yet an employee's age is analytically distinct from his years of service."); *Erickson*, 271 F.3d at 725 ("Length of tenure, although it may correlate empirically with age, is not synonymous with age . . . .").

Nor has Scott shown that the defendants use the term "retire" as a proxy for age to express discriminatory bias. For example, an employer might routinely use a facially innocuous term like "experienced" to refer to an older worker in a disparaging way. If there was evidence of such routine usage, then a statement like "Let's fire him; he's too experienced" would be direct evidence of age discrimination. *Cf. Hazen Paper*, 507 U.S. at 612-13. This is because no factual inference of discrimination need be drawn from the statement, only a translation need be applied – i.e., "experienced" means "too old" to that particular employer. Here, though, Scott has offered no evidence that the defendants use "retire" as a proxy for "too old" or some other derogatory, age-based term. *See Erickson*, 271 F.3d at 725 (affirming summary judgment where plaintiff failed to show that the defendant used length of tenure as a proxy for age).[3] Accordingly, because Scott has not come forward with any direct evidence of age discrimination, his claim fails.

**III.**

For the foregoing reasons, we AFFIRM summary judgment in favor of the defendants.

---

[3]Scott relies primarily upon two decisions outside this circuit to support his argument that the statement is direct evidence of age discrimination. Both opinions are, however, distinguishable. In *Ezell v. Potter*, the Seventh Circuit found that the employee had presented direct evidence of age discrimination. One of the employee's supervisors told a new hire that their "plan was to get rid of older carriers and replace them with younger, faster carriers." *Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005). This is clearly direct evidence, as the statement facially exhibits a discriminatory animus against older workers in favor of younger ones – no inferences need be made. In *Owens v. New York City Housing Authority*, the Second Circuit side-stepped the issue of whether purported comments made by an employee's supervisors constituted direct evidence of discrimination. 934 F.2d 405, 409 (2d Cir. 1991). The court did note, though, that the comment – the employee's "'problems' had to do with her age and entry into menopause" – raised a genuine issue of fact on the issue of pretext. *Id.* at 410. Of course, the derogatory reference to the employee's "age" is exactly what is missing in the present case.