Matthew SANDERS, Plaintiff,

v.

LINCOLN COUNTY, TENNESSEE,
et al., Defendants.

Case No. 4:15–cv–54

United States District Court,
E.D. Tennessee, Winchester Division.

Signed 02/08/2017

Jerry E. Farmer, Law Office Of Jerry E. Farmer, Murfreesboro, TN, L. Gilbert Anglin, Kious, Hall & Anglin, Murfreesboro, TN, for Plaintiff.

Mary Dee Allen, Wimberly, Lawson, Seale, Wright & Daves, Cookeville, TN, for Defendants.

## ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court is the Motion for Summary Judgment (Doc. 15) filed by Defen-

dants Lincoln County, Tennessee, Lincoln County Health System, and Lincoln County Medical Center. The Court, having carefully considered the motion, the submissions of the parties, and the applicable law, finds that Defendants' Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This civil action arises from an employment opportunity at the Lincoln County Medical Center—a hospital owned by Lincoln County and operated by Lincoln County Health System—that came about in June 2013. The part-time position was titled "Patient Registration Clerk," and its required skills were listed as follows: (1) proficiency in business-office practices, computers and communications skills; (2) understanding of and ability to use medical terminology and abbreviations; (3) must have good typing and written skills; (4) ability to interact effectively with coworkers, supervisors, management, clients, and others with whom he or she may interact; (5) strong ability to adapt to a rapidly growing and changing work environment; and (6) the ability to bend, reach, lift, carry, push, and pull up to one-third of the work day, and stand and walk between 1–2 hours per day. (Docs. 14 at 2; 15–9 at 12; 17–1 at 80). The individual hired for the job would be working in the offices of Dr. Samad Honarvar, who was an ear, nose, and throat doctor at the hospital at the time. (Doc. 17–2 at 11–14). Dr. Honarvar stressed that he was looking particularly for prior "front office" experience. (Doc. 15–8 at 2–3). On June 7, 2013, hospital administrators posted the position on the Lincoln County Health System internal website. (Doc. 17–1 at 127).

Several individuals applied for the job, including Plaintiff Matthew Sanders, who was already an employee at Lincoln County Medical Center at the time. From 2007 to 2013, Plaintiff was worked as a Mental Health Technician/Driver. The parties dispute the precise nature of Plaintiff's duties in his former job. Plaintiff asserts that he carried out various administrative tasks in addition to transporting patients, including answering the phone, providing orientation for new patients, writing in charts, filing documents, collecting and distributing mail, delivering lab work and documents, scheduling appointments, and other responsibilities relevant to the "front office" experience Dr. Honarvar desired. (Docs. 16 at 2; 17–1 at 60). Defendants appear to either deny that Plaintiff actually performed these tasks or contest that such duties constitute "front office" medical experience. Plaintiff received generally positive reviews and evaluations from supervisors in his prior position. (Doc. 17–1 at 49, 52, 128–73).

Around the same time that the patient registration clerk position became available, Plaintiff learned that his then-current job was soon to be eliminated by the hospital due to a reduction in force. For this reason, Plaintiff applied for the clerk position on June 14, 2013. (Doc. 17–1 at 58). He was 52 years old at the time. (Doc. 16 at 1).

An individual named John Thomas Miles also applied for the job. (Doc. 17–1 at 66, 92). At some point in early June, Lincoln County Health System Practice Manager Robin Matthews and Dr. Honarvar interviewed Miles. (Docs. 15–7 at 2–3; 15–8 at 2). Defendants insist that Miles was exceedingly qualified for the position. First, according to Defendants, Miles came "highly recommended" from another, unnamed employee at the Lincoln County Medical Center. (Doc. 15–7 at 2). Defendants further explain that Miles was willing to work part time and had front office experience in a veterinarian's office, specif-

ically in scheduling appointments, answering the phone, and contacting clients. (*Id.* at 3; 15–8 at 2). For these reasons, both Honarvar and Matthews felt that Miles was a good fit for the position and extended him an offer of employment.[1] (Docs. 15–7 at3; 15–8 at 2). At the time he was awarded the position, Miles was 29 years old. (Doc. 16–1 at 3).

Although Miles was offered the job, Defendants state that his employment was contingent upon "successful completion of the hiring process and approval from Human Resources." (Doc. 15–7 at 3). During this interim period,[2] and for reasons that are not entirely clear, Matthews also decided to interview Plaintiff.[3]

Plaintiff's interview with Matthews and Honarvar took place in mid-June 2013, and he alleges that the first words spoken by Honarvar upon their meeting were, "You are an *older* man," with emphasis on the word "older." (Docs. 11 at 3; 16 at 3; 16–3 at 2). Plaintiff further alleges that Honarvar expressed concern that due to his age, Plaintiff would leave the position for a better job at the first opportunity. (Docs. 16 at 4; 16–3 at 2–3). According to both parties, the interview was extremely brief. (Docs. 16–3 at 2–3; 17–2 at 15). Dr. Honarvar recommended against hiring Plaintiff. (*Id.*). According to Defendants, both Honarvar and Matthews believed that Miles

was better qualified for the position, and it was their understanding that Plaintiff wanted full-time employment as opposed to part-time. (Doc. 14 at 12). Neither Dr. Honarvar nor Ms. Matthews, however, reviewed Plaintiff's personnel file before making the decision not to hire him. (Doc. 17–1 at 37).

Shortly thereafter, Ms. Matthews approached Plaintiff and his wife, who also worked at the hospital, to announce that Plaintiff had not been selected. According to Plaintiff, Mathews explained that she "couldn't get [Honarvar] off the age thing." (Docs. 11 at 3; 16 at 4, 9; 16–4 at 2). Plaintiff also states that Matthews did not outline any of the supposed reasons or justifications now offered by Defendants.

Miles only worked a few days before resigning his position. (Doc. 17–2 at 20). Thereafter, Defendants offered the job to another applicant, Tina Allen, who was 38 years old, but she declined the offer. (Docs. 16–1 at 3; 17–1 at 100). Additional facts surrounding the issues in this case are set forth, as necessary, in the Court's analysis below.

In July 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Council ("EEOC"). (Doc. 11 at 2.) On or about December 6, 2015, Plain-

---

1. The parties dispute whether Ms. Matthews or Dr. Honarvar was the ultimate decision maker. Plaintiff asserts that both individuals made the decision; in contrast, Defendants argue the decision fell only to Ms. Matthews. In his sworn affidavit, Dr. Honarvar avers that he would "give input and hiring recommendations" to Ms. Matthews, but that she was responsible for hiring decisions. (Doc. 15–8 at 1). Ms. Matthews makes similar statements in her affidavit. (Doc. 15–7 at 2).

2. While the parties do not agree on the exact dates the following events took place, the record reflects Plaintiff applied for the position on June 14, 2013, and that hospital personnel

notified him that he was not selected on June 20, 2013. (Doc. 17–1 at 58). Thus, the relevant events pertaining to this action occurred at some point in the six days between June 14, 2013, and June 20, 2013.

3. Defendants offer rather attenuated explanations for why Matthews gave Plaintiff an interview after the position was already filled. Plaintiff argues that the offer to Miles did not occur until after Plaintiff interviewed for and was denied the position, and that Defendants' false version of events were constructed to disguise their discriminatory actions. (Doc. 16 at 17, 23).

tiff received notification from the EEOC of his right to sue. (*Id.*). Plaintiff commenced this civil action on September 2, 2015. (Doc. 1).[4] He filed his Amended Complaint on February 2, 2016, in which he alleges claims under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq.* (Doc. 11). Defendants filed their Motion for Summary Judgment (Doc. 15) and Memorandum in Support (Doc. 14) on November 17, 2016. On December 6, 2016, Plaintiff file a Response (Doc. 16). Defendants submitted their Reply (Doc. 20) on December 13, 2016. Having thoroughly reviewed the record, the Court finds that this matter has been fully briefed and is ready for disposition.

## II. STANDARD

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmov-

ing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough;

**4.** Plaintiff initially received notice of his right to sue from the EEOC on June 29, 2015. (Doc. 11 at 2). On November 23, 2015—after Plaintiff commenced the instant action—the EEOC revoked its prior notice. (*Id.*). Finally, on December 6, 2015, the EEOC reversed itself for a second time, and notified Plaintiff of his right to sue under the ADEA. (*Id.*).

there must be evidence from which a jury could reasonably find in favor of the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## III.   ANALYSIS

■ The ADEA prohibits employers from making adverse employment decisions because of an employee's age. *See* 29 U.S.C. § 623(a). Age discrimination can be proven with direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. TVA*, 128 F.3d 337, 348–49 (6th Cir. 1997). Where the claimant lacks direct evidence of age discrimination, courts must apply the *McDonnell Douglas* burden-shifting framework under which a claimant must establish a *prima facie* case of discrimination. *Id.* at 620–23. Regardless of the evidentiary route taken, the burden of proof on a plaintiff asserting an ADEA claim is the same:

> [I]t is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's "because of" language requires that a plaintiff prove by a preponderance of the evidence... that age was the 'but-for' cause of the challenged employer decision.

*Scheick v. Tecumseh Public Schools*, 766 F.3d 523, 529 (6th Cir. 2014) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

## A.   Direct Evidence of Discrimination

■ The United States Court of Appeals for the Sixth Circuit defines direct evidence as "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Kline*, 128 F.3d at 348).

■ "Direct evidence of discrimination is evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was the but-for cause of the employment decision." *Scott v. Potter*, 182 Fed.Appx. 521, 525–26 (6th Cir.2006) (internal quotations an citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criteria." *Id.* at 536. "For example, an actual statement by an employer 'proclaiming his or her ... animus' constitutes direct evidence of age discrimination." *Blaney v. Cengage Learning, Inc.*, 2011 WL 1532032, at *4 (S.D. Ohio Apr. 22, 2011) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998)). An "isolated, ambiguous, or abstract comment," however, "will not suffice." *Id.* (citing *Coburn v. Rockwell Automation, Inc.*, 238 Fed.Appx. 112, 117–18 (6th Cir.2007)) (quotation marks omitted).

■ Courts look to the following factors in assessing whether a statement qualifies as direct evidence: "(1) whether the state-

ments were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse action]." *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 478 (6th Cir.2002). "None of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account." *Id.* (citing *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir.1994)).

Plaintiff asserts that the following statements constitute direct evidence of unlawful discrimination: (1) Dr. Honarvar's statement that Plaintiff was an "older man" at his interview, with emphasis on the word "older" (Docs. 11 at 3; 16 at 3, 9); and (2) Matthews's statement to Plaintiff that he did not get the job because she "couldn't get [Honarvar] off the age thing." (Docs. 11 at 3; 16 at 4, 9). The Court will address each of these alleged statements in turn.

■ As to the first statement, and considering the aforementioned factors, the Court finds that Dr. Honarvar's observation that Plaintiff was an "older man" fails to constitute direct evidence of age discrimination. Even though Honarvar made this statement during Plaintiff's interview, it does not necessarily follow that his words were directly related to his consideration of whether Plaintiff should be hired. Rather, such a statement is open to interpretation. Merely observing that Plaintiff was an "older man" appears to be the quintessential ambiguous remark warned against by the Sixth Circuit, as it requires an inference as well as context to

be construed as discriminatory. *Compare Brewer v. New Era, Inc.,* 564 Fed.Appx. 834, 839 (6th Cir. 2014) (holding that a manager's statement that employee was "too old" was sufficient direct evidence to deny summary judgment) *with Davidson v. Quorum Health Group, Inc.,* 1 F.Supp.2d 1321, 1325 (N. D. Ala. 1997) (finding the statement "you are old enough to retire" insufficient to be direct evidence of discrimination).

■ In contrast, Matthews's statement that she "couldn't get [Honarvar] off the age thing" undoubtedly constitutes direct evidence of age discrimination. The parties do not dispute that Ms. Matthews was the decision maker,[5] and her statement makes an explicit reference to Plaintiff's age. *See Scheick,* 766 F.3d at 531 (finding direct evidence of discrimination where statements contained "direct references to age"). Matthews's words also directly relate to her hiring decision, and they are neither vague nor ambiguous; rather, if taken as truth, they evidence that Plaintiff's age was the "but-for" reason that he was not hired. Indeed, it is difficult to conceive a more direct manner in which to tell an individual that he will not be hired on the basis of his age. *See Johnson v. United Rentals, Inc.,* 2010 WL 1981295, at *4–5 (W.D. Mich. May 17, 2010) (denying summary judgment where plaintiff offered statements of upper management employees that plaintiff was "too old," and "should be [replaced] . . . with young folks.").

While Ms. Matthews's remark may reflect more upon Dr. Honarvar's opinions than her own, the statement itself demonstrates that Honarvar's alleged discriminatory views certainly influenced, if not controlled, Ms. Matthews's decision. In his

---

**5.** Plaintiff contends that Dr. Honarvar was also a decision maker for purposes of the ADEA, which the Defendants contest, but no such disagreement surrounds Ms. Matthews.

sworn affidavit, Dr. Honarver states: "Ms. Matthews was responsible for hiring decisions within my practice, [but I] would give input and hiring recommendations to Ms. Matthews for her consideration." (Doc. 15–8 at 1). It is well-settled within this Circuit that discriminatory opinions of "those who may have influenced the decision" are relevant to the Court's analysis and may serve to raise a genuine dispute of material fact. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998); *see also Sharp v. Aker Plant Servs. Grp.*, 726 F.3d 789, 798 (6th Cir. 2013).

Further, the Sixth Circuit has expressly recognized the "cat's paw" theory of liability, under which a plaintiff may challenge improper treatment despite the ultimate decision maker holding neutral opinions. *Madden v. Chattanooga City Wide Serv. Dept.*, 549 F.3d 666, 677 (6th Cir.2008). This doctrine applies when a biased employee, who may lack decision-making power, persuades the unbiased decision maker to take adverse action against a plaintiff. Said another way, the decision maker, by relying upon a "discriminatory information flow" acts as a "conduit" of prejudice. *Id.* at, 679. In determining whether the cat's paw theory is applicable, courts must consider the "employee's ability to influence the ultimate decisionmaker." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 353 (6th Cir.2012). Given the testimony provided by Dr. Honarvar in his affidavit, and the nature of Ms. Matthews's statement itself, this theory of liability readily applies.

Defendants offer no relevant arguments to counter Plaintiff's allegation in this regard, except to assert in a conclusory manner that Ms. Matthews never considered Plaintiff's age when making her decision.[6] Rather, they devote much of their brief to defending the statements of Dr. Honarvar, and asserting that Miles—the individual who was ultimately hired—was more qualified than Plaintiff. Defendants also stress that Matthews and Honarvar has already offered the job to Miles at the time of Plaintiff's interview. Notwithstanding the weight of Dr. Honarvar's statement or the qualifications of other applicants, the evidence, taken as a whole and in the light most favorable to Plaintiff, is sufficient to permit a reasonable juror to conclude that Plaintiff's age was the but-for cause of Defendants' decision not to hire him. Thus, although Defendants may ultimately prove otherwise, the Court finds Plaintiff has met his burden to come forward with evidence sufficient to establish that a genuine issue of material fact exists for trial.

## B. Circumstantial Evidence of Discrimination

Where a plaintiff attempts to establish his ADEA claim with circumstantial evidence, the *McDonnell Douglas* test applies.[7] This framework first requires an employee to establish a *prima facie* case of age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Ercegovich*, 154 F.3d at 350. To establish a *prima facie* case, Plaintiff must show, by a preponderance of the evidence: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimina-

---

**6.** In her sworn affidavit, Ms. Matthews avers she never made the statement. (Doc. 15–7 at 5).

**7.** The United States Supreme Court has not held that the *McDonnell Douglas* analysis applies to ADEA cases, but the Sixth Circuit has held that ADEA claims based upon circumstantial evidence should be analyzed under that framework. *See Geiger*, 579 F.3d at 621.

tion." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1, (2002).

If the employee meets this burden, the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Ercegovich*, 154 F.3d at 350. Assuming that such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination. *Id.*

■■■ Defendants argue at length that they are entitled to judgment as a matter of law because Plaintiff cannot establish a *prima facie* case under the *McDonnell–Douglas* framework.[8] Relevant case law makes clear, however, that when a plaintiff offers direct evidence of discrimination, such a showing is unnecessary:

> [T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff [has] his day in court **despite** the unavailability of direct evidence.

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (internal quotations and citations omitted) (emphasis added); *see also Kline*, 128 F.3d at 348 ("The direct evidence and circumstantial evidence

paths are mutually exclusive; a plaintiff need only prove one or the other, not both. If a plaintiff can produce direct evidence … then the *McDonnel Douglas–Burdine* paradigm is of no consequence."); *McCartt v. Kellogg USA, Inc.*, 139 F.Supp.3d 843, 853 (E.D. Ky. 2015) ("Because [plaintiff] has established sufficient direct evidence of discrimination, the Court need not address [the] … circumstantial approach.").

As outlined above, the Court has already found that Plaintiff has adduced sufficient direct evidence of discrimination such that a reasonable juror could find in his favor; thus, any arguments regarding his ability to establish a *prima facie* case, including whether he should be allowed to argue that he was qualified for the position at issue, need not be considered here.[9] Accordingly, summary judgment as to Plaintiff's ADEA claim will be **DENIED**.

### C. State Law Claims

The parties agree that Plaintiff's discrimination claim under the THRA, Tenn. Code Ann. §§ 4–21–101, *et seq.*, should be dismissed as time barred. Accordingly, summary judgment will be **GRANTED** as to this claim.

### D. Proper Defendants

Defendants assert that Lincoln County Medical Center is not a legal entity and has no capacity to be sued, and further argue that Defendant Lincoln County was

---

8. Specifically, they argue Plaintiff should be judicially estopped from asserting that he was qualified for the position because he later filed for social security benefits with an alleged onset date of July 1, 2013—only two weeks after the events at issue here—and in his application he repeatedly averred that he was unable to work at all due to a myriad of physical disabilities. *See Detz v. Greiner Industries*, 346 F.3d 109 (3d Cir. 2003); *Isotalo v. Kelly Services, Inc.*, 945 F.Supp.2d 825 (E.D. Mich. 2013) (finding that Plaintiff could not establish the qualification requirement of a

*prima facie* case where he offered inconsistent statements in social security documents).

9. To the extent Defendants argue that Plaintiff's ADEA claim is barred by estoppel in its entirety, Defendants do not cite any authority, and the Court has found none, affirmatively stating that a plaintiff must prove he was qualified for a position when advancing a discrimination claim through direct evidence, as opposed to circumstantial.

not the employer of the Plaintiff or Dr. Honarvar. (Doc. 14 t 17). Defendants offer no authority in this regard, however, and only conclusory arguments. On the bare record before the Court, it is impossible to meaningfully consider the Defendants' position, much less conclude that they have met their burden for summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (holding that the moving party bears the initial burden of demonstrating that no genuine issue of material fact exists). Moreover, relevant authority demonstrates that the examination of these issues by trial courts is particularly fact intensive and involves nuanced points of law. *See, e.g., Turppa v. Cnty. of Montmorency*, 724 F.Supp.2d 783, 788 (E.D. Mich. 2010). The Court declines to embark on such an endeavor where it stands almost wholly unadvised of the premises.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 15) is hereby **GRANTED** as to Plaintiff's state law claim, which is **DISMISSED WITH PREJUDICE**. In all other respects, Defendants' Motion is **DENIED**.

**SO ORDERED** this 8th day of February, 2017.